719 P.2d 1049

**STATE of Arizona,**
**Appellee/Cross-Appellant,**

v.

**Lee Arthur SCHROCK,**
**Appellant/Cross-Appellee.**

No. 6198.

Supreme Court of Arizona,
In Banc.

March 31, 1986.

Robert K. Corbin, The Atty. Gen. by William J. Schafer, III, and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee/cross-appellant.

Poore & Riddle by P. Donovan Riddle, Tucson, for appellant/cross-appellee.

CAMERON, Justice.

The defendant, Lee Arthur Schrock, was convicted of theft of property with a value greater than one thousand ($1000) dollars, A.R.S. § 13–1802(C), on 28 September 1983. In a later trial on 23 November 1983, he was also convicted of armed robbery, A.R.S. § 13–1904, and first degree murder, A.R.S. § 13–1105. These convictions all arose from one series of events. Defendant was sentenced to five years for the theft, twenty-one years for the armed robbery and received life imprisonment on the murder conviction, all to be served concurrently. Defendant appeals his convictions and seeks review of the denial of his Rule 32 petition. These matters have all been consolidated in this court. We have jurisdiction pursuant to art. 6 § 5(3) of the Arizona Constitution and A.R.S. §§ 13–4031, 13–4035.

The defendant raises the following issues for review:

A. Pretrial
1. Did the court of appeals err in vacating the trial court's order precluding certain state witnesses from testifying due to late disclosure by the prosecutor?
2. Did the trial court err by failing to determine sufficiently either the probative value or the prejudicial effect of allowing defendant to be impeached by his prior convictions?

B. Trial
1. Did the trial court violate defendant's right to confront the witnesses against him when it limited the cross-examination of a state witness?
2. Did the prosecutor impermissibly comment on defendant's failure to testify during his closing argument thereby necessitating a mistrial?
3. Is it reversible error for a judge, previously recused from the case pursuant to Rule 10.2, to interpret a jury instruction and to receive the verdict?
4. Was the jury instruction on felony murder, as modified, an incorrect statement of the law?

C. Post Trial
1. Did the trial court err in denying defendant's Rule 32 petition to expand the record concerning the prosecutor's interview of defendant prior to sentencing without notification to defendant's counsel?
2. Did the trial court err in denying defendant's Rule 32 petition based on ineffective assistance of counsel?

The facts follow.

Early in the morning of 19 November 1982, the body of a man, later identified as Morris Reed, was found in the desert about three miles from Old Tucson. The victim was sixty-four years old and suffered from severe emphysema and heart disease. It was eventually concluded that the victim had died from head injuries, including a hinge fracture of the skull. Police found two blood-stained rocks with hair stuck to them that were probably used to inflict these injuries. Other physical evidence revealed that the victim had been dragged, had suffered fractures to his sternum and ribs, had received defensive-type cuts on his hands and other cuts on his neck, probably from a knife. The time of death was estimated to have been between 1:00 and 4:00 in the morning.

At approximately 9:40 p.m. that same day, defendant and his girlfriend were stopped for speeding in what was later determined to be the victim's car. Defendant had no driver's license or registration, but said the car belonged to his friend, Morris Reed. While defendant was arrested as a result of this stop (for giving false information to a police officer and on an

outstanding warrant for a dog leash violation), he was quickly released because the police did not know that Morris Reed was the victim of the earlier homicide.

Later, after police found out about the homicide and began to search for Morris Reed's car, it was discovered abandoned in San Jose, California. Witnesses identified defendant as the person who had abandoned the car, after removing and selling the tires. Further, inside the car police found the paperwork from defendant's speeding ticket and arrest, plus defendant's fingerprint on a beer glass in the car.

Defendant was arrested on 7 December 1982, in Tucson. He denied committing the murder and said he had borrowed the car from Gilbert Hernandez, who owed defendant money. Defendant was charged with first degree murder, theft of property over $1000, and armed robbery.

Defendant's first trial resulted in a mistrial. At the second trial, defendant was convicted of theft but the jury could not reach a verdict as to the murder and armed robbery counts.

Following a third trial, defendant was convicted of first degree murder and armed robbery. At this trial defendant's girlfriend, who was a prostitute and heroin addict, testified that defendant told her that he and Gilbert had "fucked somebody over." Another witness, Jose Alvarez, a burglar and known "snitch", claimed defendant had confessed to him while they were in jail together.

## A. Pretrial

### 1. Preclusion of witnesses

Defendant argues that the court of appeals erred when it reversed the trial court's order excluding Michael Mata and Jose Alvarez from testifying because of the prosecutor's wilfully tardy disclosure of them as witnesses.

Originally, defendant was to be tried on 16 August 1983, with all witness interviews to be completed by 29 July 1983. A motion for sanctions was filed by the defense on 2 August 1983, because the state had neither provided witness interviews, nor disclosed a witness, Michael Mata, until 29 July 1983. Mata had been interviewed by the state on 15 July 1983.

Upon learning a motion for sanctions was to be filed, the state on 2 August 1983, disclosed Jose Alvarez. The state had known of this witness since 11 July 1983. In response, defendant filed a second motion for sanctions on 3 August 1983.

The state claimed it failed to timely disclose these witnesses, both of whom defendant allegedly confessed to while incarcerated, because the defendant had threatened another state witness and they (the undisclosed witnesses) were essential to the ongoing investigation of this threat. The trial court ordered the testimony of both witnesses precluded stating, "you take a calculated risk when you make those decisions as to whether or not you wanna investigate another offense and not comply with the obligations that you have in this case." The court of appeals, on a special action brought by the state, reversed the trial court stating:

It appearing that the trial court abused its discretion in precluding the witnesses Michael Mata and Jose Alvarez from testifying because the State acted in good faith in delaying disclosure until two weeks before trial and because less stringent actions are available, e.g., a continuance if necessary, see State v. Smith, 123 Ariz. 243, 599 P.2d 199 (1979); therefore

The order of preclusion is vacated and set aside.

Generally, the appropriate sanction for the violation of Rule 15 is left to the sound discretion of the trial court. *State v. (Joe U.) Smith,* 140 Ariz. 355, 681 P.2d 1374 (1984), *State v. (Joseph Clarence Sr.) Smith,* 123 Ariz. 243, 599 P.2d 199 (1979), and *State v. Clark,* 112 Ariz. 493, 543 P.2d 1122 (1975).

We have stated:

The trial court, however, should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of

Criminal Procedure are designed to implement, and not to impede, the fair and speedy determination of cases. Prohibiting the calling of a witness should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice. To be effective, discovery rules must be applied with equal force to both parties.

We, therefore, hold that prior to precluding either party's witnesses, as a discovery sanction, the court must make an inquiry into the surrounding circumstances. Failure of the trial court to do so constitutes error. The inquiry should determine if less stringent sanctions can be used. The court should also consider how vital the precluded witness is to the proponent's case, whether the opposing party will be surprised and prejudiced by the witness' testimony, whether the discovery violation was motivated by bad faith or wilfulness, and any other relevant circumstances.

*State v. (Joseph Clarence, Jr.) Smith,* 123 Ariz. at 252, 599 P.2d at 209 (1979) (footnotes and citations omitted). *See also State v. (Joe U.) Smith,* 140 Ariz. at 359, 681 P.2d at 1378 (1984). In the instant case, it appears that the trial judge neglected to use the less stringent sanctions available. The court of appeals was correct in its ruling.

### 2. Impeachment by prior convictions

■ Defendant claims the trial court made an insufficient inquiry into the probative value and prejudicial effect of allowing him to be impeached by his prior convictions. As a result of the trial court ruling, defendant chose not to testify. By his decision not to testify, defendant has waived any argument that the trial court erred in its decision to allow him to be impeached by his prior convictions. *State v. Correll* 148 Ariz. 468, 715 P.2d 721 (1986); *State v. Allie,* 147 Ariz. 320, 710 P.2d 430 (1985) (both relying on *Luce v. U.S.,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

### B. Trial

#### 1. Limitation of cross-examination

Defendant contends his sixth amendment right, U.S. Const. amend. VI., to confront the witnesses against him was violated when the trial court sustained an objection limiting the cross-examination of Jose Alvarez, a state witness. Specifically, defendant claims it was error for the trial court to deny him the right to cross-examine Alvarez concerning the "explanation" Alvarez gave police upon his arrest for armed burglary.

The defense was allowed to elicit several facts by which the jury could assess Alverez's credibility and motive for testifying:

1. That Alvarez was in jail on an armed burglary charge at the time defendant allegedly confessed to him.

2. That Alvarez had repeatedly sought to exchange information for the dropping of the armed burglary charge against him.

3. That Alvarez had already provided police with some information in hope of "striking a deal" and was told it was not enough.

4. That Alvarez was facing a twenty-five year to life sentence on the armed burglary charge, but that the charge had been dropped in exchange for his testimony.

5. That Alvarez was a known "snitch" who had prior convictions and had also previously testified about another "jailhouse confession" in exchange for a deal on his own charges.

In addition to these facts, defendant wanted to introduce the story told by Alvarez immediately after his arrest. Alvarez told the officers that he had wandered into a residential yard to pick an orange. While in the yard he became thirsty and wanted to wet down his bandana. He determined that the water in the house would be cooler than water outside the residence and, therefore, he merely entered the house to obtain cooler water. Law enforcement officers were summoned and when they arrived at the residence, Alvarez was still in

the house. He fled from the residence and was pursued by the police, who cornered him after a short chase. At the time he was arrested, Alvarez was wearing gloves.

■ The question on review is not whether we would have allowed the defendant to cross-examine Alvarez on this point, but whether the trial court abused its discretion by not allowing such cross-examination. *State v. Fleming*, 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977). Thus, the parameters of cross-examination will not be disturbed on appeal unless the trial court has clearly abused its discretion. *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982).

In the instant case, Alvarez's "explanation" upon his arrest for burglary was found by the trial court to be irrelevant. While wide latitude is to be allowed in cross-examination, the inquiry must be relevant. *State v. Evans*, 120 Ariz. 158, 161, 584 P.2d 1149, 1152 (1978). After reviewing the record, we feel the trial judge allowed ample cross-examination on relevant matters for the jury to assess the credibility of Alvarez as a witness. We find no abuse of discretion.

2.  Comment on defendant's failure to testify

Defendant contends that the trial court erred when it denied his motion for mistrial based on the prosecutor's making allegedly impermissible comments during closing arguments. The defendant's statement to police upon his arrest was discussed by the defense during opening arguments. The defense attorney stated:

> He gave a taped statement to police officers. You are going to hear the tape
> . . .
> He gave a [taped] statement right after he was arrested to the police explaining what happened. ... this is the one Mr. Ramage-White contends is just filled with lies.
> *Well, I want you to listen to it. You are going to have to pick out from all the testimony here the truth.*

(emphasis added). During the prosecutor's initial closing argument he said concerning the taped statement

> And this up here shows he lied on another occasion. *If the State—the people of the State of Arizona brought in a witness, put him in this chair, he made a statement like this and the defense attorney proved he lied to you on significant details, you wouldn't listen to him.*

(emphasis added). Further, the prosecutor, in the final closing argument, stated:

> The time of death. *The Defendant has no alibi for the time of death.* 2:00 to 4:00 in the morning the bars have closed. If he came home, went back to the bar, so Arlene missed him doesn't make sense. The bars have closed.
> *He's got no alibi for the time of death.*

(emphasis added). Defendant had noticed an alibi defense, Rule 15.2(b) Ariz.R. Crim.P., 17 A.R.S. This defense was not developed at trial. The defendant moved for mistrial after each comment, the motions were denied.

■ In Arizona, a prosecutor is prohibited both by constitution and by statute from bringing to the jury's attention either directly or indirectly the fact a defendant did not testify. Ariz. Const., art. 2, § 10; A.R.S. § 13–117(B); *State v. Christensen*, 129 Ariz. 32, 38, 628 P.2d 580, 586 (1981). *See also Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). To determine whether a particular argument is improper, the statements must be examined in context to determine whether the jury would naturally and necessarily perceive them to be a comment on the failure of the defendant to testify. *State v. Christensen*, 129 Ariz. at 39, 628 P.2d at 587. Further, to be constitutionally improper, the comment must (1) be adverse, in that it supports an unfavorable inference against the defendant, and (2) operate as a penalty for defendant's exercise of his constitutional right. *State v. Mata*, 125 Ariz. 233, 238, 609 P.2d 48, 53, *cert. denied*, 449

U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980).

■ As to the prosecutor's first statement, the trial court found that it was simply a comment highlighting that defendant's prior statement was not believable. We agree. The defense was the first to discuss the defendant's statement and urge its veracity. The prosecutor was seeking to attack the believability of defendant's statement, not to highlight his failure to testify. We feel this comment by the prosecutor was both a proper attack on defendant's statement and an invited reply to the opening statement of defense counsel. *See State v. Christensen, supra.*

The second comment by the prosecutor is more bothersome. Although the defense had initially noticed alibi as a possible defense, no alibi evidence was presented at trial. The prosecutor's emphasis on defendant's lack of an alibi for the time of death could indicate that the defendant failed to take the stand and tell the jury where he was during this time period. The state, however, maintains that this comment was aimed at rebutting the cross-examination of Arlene Alvarez. The defense had elicited from Ms. Alvarez that it was possible defendant had arrived home before she woke up and saw him at 4:00 a.m.. The defendant did not cover this during his earlier taped statement. Admittedly the prosecutor's comment called to the jury's attention the fact that the defendant had not put forth an alibi for the time of the murder. Nonetheless, the defendant had indicated an alibi defense and we believe the comment of the prosecutor, though questionable, was a valid comment on evidence that defendant could have but did not present through the testimony of others.

■ We do not believe that the prosecutor's comment impermissibly created the inference that defendant did not take the stand and testify as to what he was doing during the time of the murder. The comment related only to the fact that the defendant in his statements to the officers did not support the alibi defense defendant had pled. *Compare State v. Decello,* 113 Ariz. 255, 258, 550 P.2d 633, 636 (1976) (comment, "No one, no one, no one got up on this stand and testified to you contrary …" held to be fundamental error); *State v. Rhodes,* 110 Ariz. 237, 238, 517 P.2d 507, 508 (1973) ("that she did not have to explain away, or that she did not explain away off of that witness stand" held improper).

### 3. Participation by a recused judge

This case was originally assigned to Judge Hawkins. However, on 4 February 1983, defense counsel filed a "Notice of Change of Judge" pursuant to Rule 10.2, Ariz.R.Crim.P., 17 A.R.S. The matter was eventually assigned to Judge Druke.

Following defendant's third trial, Judge Druke informed the jury that, due to a schedule conflict, he would be absent during the first day of their deliberations. He promised, however, to find a judge to "cover" for him. Subsequently, Judge Druke arranged to have Judge Hawkins fill in for him. As a result, Judge Hawkins was called upon to answer a jury question concerning the felony murder instruction and to receive the verdict. Defendant claims the participation of Judge Hawkins, after he had been peremptorily challenged under Rule 10.2, renders the verdict void. We do not agree.

■ Defendant is correct that once a judge is challenged under 10.2 that "the judge shall proceed no further in the action, except to make such temporary orders as may be necessary in the interest of justice before the action can be transferred to the presiding judge." Rule 10.6, Ariz.R.Crim.P., 17 A.R.S. Judge Hawkins initially complied fully with this rule. His reentry into the matter, was in violation of the rule but was not objected to by defense counsel. While we do not recommend this practice, we find that Judge Hawkins' receipt of the jury's verdict was merely a ministerial duty and did not really involve judicial participation. *See State v. Wat-*

*kins,* 125 Ariz. 570, 575, 611 P.2d 923, 928 (1980).

The interpretation of a jury instruction by Judge Hawkins raises more serious problems. However, since defense counsel not only failed to object to Judge Hawkins performing this duty, but further approved the instruction itself we find any error in this situation has been waived for purposes of review. *Id.*

### 4. Jury instruction

Defendant claims that the first degree murder instruction, as modified by Judge Hawkins in answer to the jury's question, was an incorrect statement of the law and therefore, reversible error.

The original instruction, given by Judge Druke read in pertinent part:

> The crime of first-degree murder may be proven in one of two ways. First, if there is proof of the following two things:
>
> 1. That the Defendant and another person committed a felony such as the crime of robbery; and
>
> 2. In the course of an in furtherance of the crime, the Defendant or the other person caused the death of another person.

After deliberating until 5:00 p.m., the jury delivered a note to Judge Hawkins asking:

> Is it necessary to believe beyond a reasonable doubt that 2 people were involved to convict on the 1st paragraph for 1st degree murder? Please interpret the language?

After conferring with the prosecutor and defense counsel, Judge Hawkins sent the jury a note at 5:30 p.m. which read:

> Mr. Paul and jurors,
>
> No, the instruction could correctly have read "The defendant *and/or* another person ..."

(emphasis in original). At 6:05 p.m. the jury rendered a verdict of guilty on the first degree murder charge.

Defendant now argues that this is an incorrect statement of the law. Because both elements of the "felony murder" in-struction are disjunctive, defendant contends the jury could find him guilty even if another person committed the robbery and murder and the defendant was neither a participant nor even an acquaintance of the "other person." We do not agree.

Initially we note that defense counsel, when consulted concerning Judge Hawkins' proposed reply, did not object to the modified instruction. The failure to object to an instruction either before or at the time it is given waives any error, absent fundamental error. *State v. Amarillas,* 141 Ariz. 620, 623, 688 P.2d 628, 631 (1984); Rule 21.3, Ariz.R.Crim.P., 17 A.R.S. In the instant case, we do not believe the instruction was error, let alone fundamental error.

"It is only when the instructions taken as a whole are such that it is reasonable to suppose the jury would be misled thereby that a case should be reversed for error therein." *State v. McNair,* 141 Ariz. 475, 481, 687 P.2d 1230, 1236 (1984) (quoting *Macias v. State,* 36 Ariz. 140, 153, 283 P. 711, 716 (1929)). In the instant case, the jury found that *the defendant,* not some other person, had committed the robbery when it found him guilty of armed robbery. Having found the defendant guilty of robbery, the jury could then properly find him guilty of first degree murder, even under the modified instruction. We do not believe the jurors were misled by its possible disjunctive application. *Cf. State v. Avila,* 147 Ariz. 330, 710 P.2d 440 (1985) (no reversible error where, despite failure to instruct on necessity of overt act for conspiracy, the jury necessarily found an overt act by finding defendant guilty of armed robbery).

### C. Post Trial

#### 1. Rule 32 petition

Defendant was found guilty of armed robbery and murder on 23 November 1983. Sentencing was set for 22 December, with the state seeking the death penalty. On 29 November, a police detective interviewed

the defendant at the county jail pursuant to instructions from the prosecutor. Neither the prosecutor nor the detective informed defense counsel of this interview. Upon learning of the interview, defense counsel complained to the prosecutor about his conduct but did not inform the trial court. Defendant was sentenced to life imprisonment for the murder and to an aggravated term of 21 years for the armed robbery.

A Rule 32 petition was filed seeking a hearing to determine what information the prosecutor learned during this interview and what effect it had on defendant's sentence. Also raised was the question of inadequate representation of counsel. The petition was denied. Defendant contends this denial was in error.

A petition for post-conviction relief is addressed to the sound discretion of the trial court and the decision of the court will not be reversed unless an abuse of discretion affirmatively appears. *State v. Adamson*, 136 Ariz. 250, 265, 665 P.2d 972, 987, *cert. denied*, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). A defendant is, however, entitled to a hearing when he presents the trial court with a colorable claim, that is a claim which if his allegations are true might have changed the outcome. *See State v. Jeffers*, 135 Ariz. 404, 427, 661 P.2d 1105, 1128, *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983).

▆▆▆▆▆ "In our opinion Rule 32 has as its aim the establishment of proceedings to determine the facts underlying a defendant's claim for relief when such facts are not otherwise available." *State v. Bell*, 23 Ariz.App. 169, 171, 531 P.2d 545, 547 (1975). *See also State v. Carriger*, 132 Ariz. 301, 305, 645 P.2d 816, 820 (1982). Here there are no facts for either the trial court or this court to determine conclusively whether defendant's sentence was affected by this interview. When such doubts exist, a hearing should be held to allow the defendant to raise the relevant issues, to resolve the matter, and to make a record for review. *State v. Carriger*, 132 Ariz. at 305, 645 P.2d at 820. In the in-

stant case, "[t]he alleged misconduct of the county attorney and the extent of that alleged misconduct is better shown at a proper post-conviction hearing, at which time evidence may be taken to show that truth or falsity of defendant's allegations." *State v. Blazak*, 131 Ariz. 598, 604, 643 P.2d 694, 700, *cert. denied;* 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).

Defendant also contends that the trial court erred when it denied his Rule 32 petition seeking a new trial based on ineffective assistance of counsel. Defendant alleged six areas of deficient performance: 1) failing to assert defendant's speedy trial rights, 2) failing to renew or preserve pretrial motions in subsequent trials, 3) failing to make a record regarding denial of confrontation of a state witness, 4) allowing a recused judge to participate in defendant's third trial, 5) consenting to an erroneous modification of a jury instruction and 6) failing to have the prosecutor recused for misconduct. The trial court denied the petition stating "the petition and reply are insufficient to set forth a colorable claim of ineffective assistance and that no material issue of fact or law exists...."

▆▆▆▆▆ As stated above, a petition for post-conviction relief is addressed to the sound discretion of the trial court. *State v. Adamson, supra.* The issue, therefore, is whether defendant stated a colorable claim of ineffective assistance of counsel under *State v. Nash*, 143 Ariz. 392, 694 P.2d 222, cert. denied, —— U.S. ——, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), and *State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984). We believe the defendant has stated a colorable claim.

We have reviewed the record for fundamental error, A.R.S. § 13–4035 and have found none. The convictions and sentences are affirmed. The matters are remanded to the trial court for a hearing on defendant's Rule 32 Petition.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, FELDMAN, JJ., concur.