749 P.2d 914

**STATE of Arizona, Appellee,**

v.

**Howard Lee LITTLES, Appellant.**

**No. Cr–85–0303–AP.**

Supreme Court of Arizona.

Jan. 21, 1988.

**6**

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Div., Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa Co. Public Defender, James H. Kemper, Deputy Maricopa Co. Public Defender, Phoenix, for appellant.

GORDON, Chief Justice.

Howard Lee Littles was convicted by a jury of aggravated assault and kidnapping. The jury verdicts specifically found that both crimes were dangerous offenses. After a hearing, the court determined that Littles was on parole at the time of the offenses and sentenced him to two concurrent life sentences pursuant to A.R.S. § 13-604.01.[1] Littles filed a timely appeal in which he raises the following two issues:

1.  Did the trial court err in allowing a previously undisclosed witness to testify regarding the operability of the gun appellant used in the commission of the crimes charged?

2.  Did the court improperly sentence appellant under A.R.S. § 13-604.01?

We have jurisdiction pursuant to Arizona Constitution article 6, section 5(3), and A.R.S. §§ 13-4031, -4033, and -4035.

### FACTS

On July 28, 1984, a cab driver received a dispatch to pick up a customer at a laundromat in Phoenix. Upon arriving, the driver saw Littles, and stopped to give him a ride. Littles got into the front seat of the cab and directed the driver to a location where Littles said that his car was being repaired.

As they approached their destination, Littles told the driver he had changed his mind and wanted to be taken to his home, which was several miles away in north Phoenix. Near the outskirts of Phoenix, Littles pulled a gun on the driver and told him to drive out of town.

For the next several hours, the two men drove north. During this time, Littles held the gun on the driver and told him stories about being in trouble with the law and taking part in a shootout with the police.

The driver eventually persuaded Littles that they had to stop to get gas. As they approached Winslow, Arizona, Littles instructed the driver to go to a full-service gas station so both men could stay in the cab. The driver complied with this request, paid the attendant for the gas, and turned back onto the highway.

Meanwhile, a highway patrolman, Gene Fredericks, had seen the taxicab pull into the gas station and noticed that the cab was not from a Winslow company. His suspicions aroused, Officer Fredericks watched as the cab got gas, then followed the cab when it turned onto the highway. Fredericks then called Officer Denlinger, another highway patrolman, to back him up. Finally, Fredericks pulled the cab over.

Denlinger approached the passenger side of the cab while Fredericks approached the driver's side. Fredericks took identification from the two men and returned to his patrol car to verify the licenses and check on the status of the vehicle.

Littles, in the meantime, had placed his gun between his seat and the passenger door to avoid detection. The cab driver, realizing that Littles did not have access to the gun, leaped across the cab, grabbed his wrists, and tried to pin his arms down. Denlinger saw the scuffle, opened the pas-

---

1.  Renumbered § 13-604.02(A) by Act of May 16, 1985, Ch. 364, § 5, 1985 Ariz. Laws 1435.

senger door, grabbed the gun, dragged Littles out of the cab, and handcuffed him.

The officers examined the gun and found that it was loaded with five bullets. Upon searching Littles, the officers found several bullets in his pockets.

## LEGAL PROCEEDINGS

On August 7, 1984, appellant Littles was indicted on the following two counts: kidnapping, a class 4 felony, in violation of A.R.S. §§ 13–1304, –1301, –701, –702, and –801; and aggravated assault, a class 3 felony, in violation of §§ 13–1204(A)(2), (B), –1203(A)(2), –701, –702, and –801. The indictment contained a specific allegation by the State that the aggravated assault was a dangerous felony involving the use or exhibition of a dangerous weapon or instrument, in violation of A.R.S. § 13–604(K).

On October 4, 1984, appellant was again indicted on one count of kidnapping, this time as a class 2 felony, in violation of A.R.S. §§ 13–1304, –1301, –701, –702, –801 and –604.01. This indictment also contained a specific allegation by the State that the crime charged was a dangerous felony.[2] Eventually, the trial court consolidated the two cases, and the State agreed to drop the class 4 felony kidnapping count charged in the August 7, 1984, indictment.

A jury trial commenced on October 8, 1985. The State and the appellant presented their testimony and both sides rested. When the parties met to settle jury instructions, appellant moved for a directed verdict on the issue of dangerousness. He maintained that the State had failed to prove the operability of the gun he alleg-

edly used. This, he contended, was a necessary element of the dangerousness allegation, because a permanently inoperable firearm is not considered a deadly weapon.[3] Prior to this motion, the gun's operability was never discussed.

The trial judge, the prosecutor, and defense counsel spoke at length regarding how to proceed. The gun and bullets had been admitted as evidence, and the judge noted that the jury could determine on its own whether the gun was operable. To avoid the risk that the jury might load and fire the weapon, the judge thought it much safer to have an expert, if one was available, testify regarding the operability of the gun. The prosecutor stated that, in fact, a technician had fired the gun. The prosecutor then moved to reopen its case to allow the technician to testify that the gun fired and thus was not permanently inoperable.

Over defendant's objections, the trial court allowed the State to reopen its case for the purpose of allowing testimony on the operability of the gun. The defendant claimed that allowing the testimony was error in that the witness had not been disclosed in accordance with the discovery requirements of Rule 15, Ariz.R.Crim.P., 17 A.R.S., and thus should have been precluded. The trial court refused to preclude the witness. Defense counsel then requested a two-week continuance during which he could interview the witness or perhaps find a witness of his own. The prosecutor opposed the motion on the basis that the testimony was plain and simple: Yes, the gun shoots. The court denied the continuance and allowed the State's expert to testify.

2. On September 7, 1984, the prosecution filed an allegation that appellant was on parole when he committed the offenses, thus activating A.R.S. § 13–604.01 (renumbered –604.02) for purposes of enhanced punishment.

3. A.R.S. § 13–604(K) provides in part:
   "[D]angerous nature of the felony" means a felony involving the use or exhibition of a *deadly weapon* or dangerous instrument.... (Emphasis added.)
   Likewise, A.R.S. § 13–604.01(A) (renumbered –604.02(A)) provided enhanced punishment for:
   [a] person convicted of any felony offense involving the use or exhibition of a *deadly*

*weapon* or dangerous instrument.... (Emphasis added.)
"Deadly weapon" is, in turn, defined as "anything designed for lethal use. The term includes a firearm." A.R.S. § 13–105(9) (renumbered –105(10)). "Firearm" is defined as "any loaded or unloaded pistol, revolver, ... or other weapon which will or is designed to or may readily be converted to expel a projectile by the action of expanding gases, *except that it does not include a firearm in permanently inoperable condition.*" A.R.S. § 13–105(12) (emphasis added) (renumbered –105(14)).

156 Arizona Reports—3

## DENIAL OF SANCTIONS

The prosecution must disclose the names of any experts that have examined "any evidence in a particular case." Ariz.R. Crim.P. 15.1(a)(3), 17 A.R.S. Rule 15.7 lists the sanctions a trial judge may impose for violating these disclosure requirements. Among these sanctions are granting a continuance and precluding a witness from testifying. Appellant claims that the trial judge erred in the present case by failing to impose any sanction at all.

■ In Arizona, the selection and imposition of sanctions are within the sound discretion of the trial judge and will not be reversed absent an abuse of discretion. *State v. Piedra*, 120 Ariz. 53, 57, 583 P.2d 1373, 1377 (App.1978); *see also State v. Schrock*, 149 Ariz. 433, 437, 719 P.2d 1049, 1053 (1986). An abuse of discretion usually does not occur absent prejudice to the defendant. *State v. Fisher*, 141 Ariz. 227, 246, 686 P.2d 750, 769 (1984) ("[I]t is frequently not an abuse of discretion for the trial court to permit a previously undisclosed witness to testify if the court believes that no prejudice will result to the accused...."); *see also State v. Kevil*, 111 Ariz. 240, 246, 527 P.2d 285, 291 (1974). In the instant case, appellant claims he was prejudiced by the trial court's failure to preclude the State's previously undisclosed witness; alternatively, he claims prejudice from the judge's denial of a continuance. We disagree.

It was not an abuse of discretion for the trial court to allow the witness to testify. Indeed, preclusion would have been inappropriate in this case. "The trial court ... should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of Criminal Procedure are designed to implement, and not impede, the fair and speedy determination of cases." *Schrock*, 149 Ariz. at 437, 719 P.2d at 1053.

This court has suggested that when deciding what sanctions, if any, to impose, a trial court should consider how vital the previously undisclosed witness is to the case, whether the opposing party will be surprised and prejudiced by the witness's testimony, whether the discovery violation was motivated by bad faith, and other relevant circumstances. *Id.* (quoting *State v. Smith*, 123 Ariz. 243, 252, 599 P.2d 199, 208 (1979)).

Here, the appellant claimed that without evidence on the operability of the gun, the dangerousness allegations should have been dismissed. However, until appellant's motion after both parties had rested, the operability of the gun was never at issue in any stage of the proceedings. No evidence suggested that the gun was anything but operational. The testimony of the witness was extremely simple; the witness merely testified that the gun, which had already been introduced into evidence, worked. There is absolutely no evidence of bad faith on the part of the prosecutor. Moreover, we find nothing in the record to indicate that appellant suffered any prejudice as a result of the judge refusing to preclude the witness.

■ We also find no abuse of discretion in the judge's refusal to grant a continuance. Defendant has shown no prejudice from the denial of the continuance. Absent such a showing, we will not disturb the trial court's ruling.[4]

■ Finally, appellant suggests that it was improper for the judge to allow the State to reopen its case to present this testimony after both parties had rested. It is well settled that the trial judge is given great discretion in deciding whether to grant a motion to reopen. *State v. Taylor*, 112 Ariz. 68, 83, 537 P.2d 938, 953 (1975); *State v. Thomas*, 110 Ariz. 120, 131, 515 P.2d 865, 876 (1973). In this case, the judge avoided a potentially dangerous situation in which jurors might have tried to discover for themselves whether the gun was operable, and caused no prejudice to the appellant. We hold the judge did not

---

4. We note that under *State v. Rosthenhausler*, 147 Ariz. 486, 492, 711 P.2d 625, 631 (App.1985), the State "had no burden to prove the gun was not permanently inoperable absent evidence sufficient to generate a reasonable doubt as to the inoperability of the gun." *See also People v.* *Gaines*, 103 Cal.App.3d 89, 162 Cal.Rptr. 827 (1980). This further supports our view that defendant suffered no prejudice from the denial of a continuance, because no evidence whatsoever was introduced suggesting that the gun was permanently inoperable.

abuse his discretion in allowing the State to reopen.

## SENTENCING

 Appellant claims that he was improperly sentenced as a dangerous offender under A.R.S. § 13–604.01. Specifically, he alleges that the prosecutor filed no separate allegation of dangerousness pursuant to this court's decision in *State v. Barrett*, 132 Ariz. 88, 89, 644 P.2d 242, 243 (1982) ("If charges are brought by indictment ... it becomes necessary for the State to file an allegation of dangerous nature prior to trial.").

The part of *Barrett* upon which appellant relies discussed whether a grand jury has the power to add to an indictment allegations that are concerned only with punishment, and do not comprise a separate "public offense." *Id.* at 89, 644 P.2d at 243. This court stated that consideration of punishment is not within the purview of the grand jury's charge, and that the *State* must file an allegation of dangerousness. *Id.* (citing *State v. Birdsall*, 116 Ariz. 112, 568 P.2d 419 (1977)).[5]

In this case, the grand jury charged appellant with "KIDNAPPING, A CLASS 2 AND DANGEROUS FELONY." The indictment listed the various statutes appellant allegedly violated, and specifically referred to A.R.S. § 13–604.01.

The State added the following paragraph to the indictment:

> The State of Arizona further alleges that the offense charged in this count is a dangerous felony because the offense involved the use or exhibition of a deadly weapon or dangerous instrument, to-wit: a gun, in violation of A.R.S. § 13–604(K). (Emphasis added.)

The allegation of dangerousness in this case was clearly made by the State, not by the grand jury. Therefore, although the better practice is for the prosecutor to file an allegation of dangerousness in a separate document, the grand jury did not act in excess of its power, and the allegation of dangerousness was sufficient. *State v. Barrett*, 132 Ariz. 88, 644 P.2d 242 (1982); *State v. Birdsall*, 116 Ariz. 112, 113–4, 568 P.2d 419, 420–21 (1977).

Pursuant to A.R.S. § 13–4035, we have searched the record for fundamental error and have found none.

Affirmed.

FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.

Note: Justice JAMES MOELLER recused himself and did not participate in the determination of this matter.

---

5. Note that appellant is not claiming that he had no notice that the State was seeking enhanced punishment under A.R.S. § 13–604.01. Nor could he make such a claim. The recital of § 13–604.01 in the indictment gives sufficient notice that the State will seek enhanced punishment. *See State v. Waggoner*, 144 Ariz. 237, 239, 697 P.2d 320, 322 (1985). Here, appellant had notice not only from the indictment, but also from an allegation of release status filed by the State over a year before trial. This is clearly sufficient. *See id.; see also State v. Noriega*, 142 Ariz. 474, 482–83, 690 P.2d 775, 783–84 (1984) (notice sufficient even when the indictment cited the wrong enhancement provision in A.R.S. § 13–604.01, when allegation of dangerousness in the indictment along with other conduct of prosecutor indicated the correct section under which prosecutor sought to enhance defendant's sentence).