NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TONY LEE MYERS, *Appellant*.

No. 1 CA-CR 15-0455
FILED 9-1-2016

Appeal from the Superior Court in Maricopa County
No.  CR2014-156515-001
The Honorable Erin Otis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kent E. Cattani joined

---

**P O R T L E Y**, Judge:

**¶1** Tony Lee Myers appeals his convictions and sentences for burglary in the third degree and possession of burglary tools. He argues prosecutorial misconduct denied him a fair trial, the trial court should have granted his request to instruct the jury pursuant to *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964), and that he was improperly sentenced as a category three repetitive offender. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2** While responding to a call regarding "a suspicious subject," Officer Hyde observed Myers riding a bicycle while balancing a large duffle bag and a square object on the handlebars. Because Myers matched the description of the subject from the call, Officer Hyde conducted a stop and noticed that the square object was a deep-cycle marine battery with wires attached to it that appeared to have been recently cut. The officer also noticed wire cutters in Myers' jacket pocket.

**¶3** Officer Hyde asked Myers where he had obtained the battery, and Myers responded that someone gave it to him from a car located nearby in return for work he had done. Officer Ross, who had arrived, went to the area Myers described, but did not find any abandoned cars or other vehicles that could have transported the battery.[2] Meanwhile, Sergeant Rogers

---

[1] We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, 340 P.3d 1110, 1112 n.2 (App. 2015) (citation omitted).

[2] At trial, Officer Ross noted it would be odd to look for a deep-cycle marine battery in a car. He explained, "The only way it would be in there if it was like in the back of a pickup truck or out. It wouldn't be inside of a wrecked vehicle." Ross did not see a pickup truck in the area he searched.

discovered a school bus near the area of the call, and noticed the battery compartment was unlatched and empty, except for several cut wires.

**¶4**       Officer Hyde then asked Myers if he had taken the battery from the bus.  Myers responded that he "didn't know what [Officer Hyde was] talking about."  The officers then contacted the owner of the bus, who identified the battery Myers was carrying as one of two batteries that were inside the bus.[3]  The police gave the battery to the owner of the bus, and he took it with him.

**¶5**       Myers was charged with third-degree burglary, a class 4 felony, and possession of burglary tools, a class 6 felony.  The jury found him guilty as charged.  At the subsequent sentencing hearing, the trial court found that Myers had two historical prior felony convictions, and sentenced him as a category three repetitive offender by sending him to prison for mitigated concurrent prison terms.  Myers filed an appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[4]

## DISCUSSION

### I.    Prosecutorial Misconduct

**¶6**       Myers argues the prosecutor engaged in three instances of misconduct at trial that individually and cumulatively require reversal.  He first contends that, during opening statements, the prosecutor appealed to the fears of the jury and improperly argued inferences and conclusions to be made from the expected evidence.  Myers also argues the prosecutor committed misconduct by eliciting testimony from Officer Ross that commented on his right to remain silent.

**¶7**       To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *State v. Moody*, 208 Ariz. 424, 459, ¶ 145, 94 P.3d 1119, 1154 (2004) (citations omitted).  To warrant reversal, "[t]he misconduct must be 'so pronounced and persistent

---

[3] The victim testified he had "checked the bus" about a week before the officers contacted him regarding the theft. At that time, the bus' two batteries were "still there."

[4] We cite to the current version of the statute unless otherwise noted.

that it permeates the entire atmosphere of the trial.'" *State v. Morris*, 215 Ariz. 324, 335, ¶ 46, 160 P.3d 203, 214 (2007) (quoting *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26, 969 P.2d 1184, 1191 (1998)).

¶8        The prosecutor began her opening statements as follows:

> Thank you, Your Honor. Good afternoon, ladies and gentlemen. We're here because the defendant thinks that it's okay to take things that don't belong to him. He thinks you're going to let him get away with it because nobody saw him actually take it. Your verdict will decide if he's right.

¶9        Myers objected, arguing the phrase "to let him get away with it" inappropriately "[i]nflames the passions of the jury." The court disagreed, but told the prosecutor she should "[j]ust move on."

¶10       The prosecutor then outlined the expected evidence, and stated:

> The State has charged the defendant with burglary in the third degree and possession of burglary tools. The State charged the defendant with this -- with these charges because the defendant clearly entered into that battery compartment of the bus, used the wire cutters to cut –

¶11       Myers then objected because the prosecutor was improperly "arguing to the jury the charges and the evidence that supports those charges." The court overruled the objection, and the prosecutor concluded:

> As I was saying, the State has charged the defendant with the burglary and the possession of burglary tools because the State believes that the evidence at trial will show that the defendant entered into that bus compartment, cut the wires attached to the battery, and the possession of the wire cutters are [sic] burglary tool. Therefore, at the end of this trial the State will request that you render a verdict of guilty as to both counts against the defendant. Thank you.

¶12     The prosecutor's initial comment during her opening statement, "He thinks you're going to let him get away with it because nobody saw him actually take it," was improper and beyond the scope of appropriate opening statement, given that it was more argumentative than informative, *see State v. King*, 180 Ariz. 268, 278, 883 P.2d 1024, 1034 (1994), but it was not inflammatory because it was not an appeal to the jurors' fears or a request to the jury to "send a message" to society.  Instead, the prosecutor was referring, albeit inartfully, to Myers' noticed defense of insufficient evidence, given that there were no eyewitnesses to the burglary or theft, and then stating the obvious:  Myers desired not-guilty verdicts.  *See State v. Eisenlord,* 137 Ariz. 385, 390, 670 P.2d 1209, 1214 (App. 1983) (concluding that the prosecutor's comments were proper as defense counsel had given notice of entrapment was a defense).

¶13     "Opening statements are intended to inform the jury of what the party expects to prove and prepare the jury for the evidence that is to be presented."  *King*, 180 Ariz. at 278, 883 P.2d at 1034 (citation omitted). But, opening statements are not a time to argue the inferences and conclusions that may be drawn from evidence yet to be admitted.  *State v. Bible*, 175 Ariz. 549, 602, 858 P.2d 1152, 1205 (1993) (citation omitted); *see also King*, 180 Ariz. at 278, 883 P.2d at 1034.

¶14     Here, the prosecutor's statement that "the defendant clearly entered into that battery compartment of the bus, used the wire cutters to cut-" arguably did not comport with *Bible* because the State's case rested entirely on circumstantial, not direct, evidence.  However, unlike in *Bible*, the prosecutor here properly clarified, "the State believes that the evidence at trial will show that the defendant entered into that bus compartment, cut the wires attached to the battery . . . ."  With the clarification, the prosecutor's statement did not rise to the level of misconduct.

¶15     The third instance of purported misconduct occurred during the State's redirect examination of Officer Ross. Earlier, during the officer's cross-examination by Myers' counsel, he answered, "no" when asked whether he took Myers with him to search the area Myers claimed that someone gave him the battery; and whether Myers was there to give additional directions to get to the right spot.  Then, on redirect, the following occurred:

> Q. Another question that the defense attorney
> asked you was about taking [Myers] around the
> location to try to locate where he claimed he
> took the battery, right?

A. Correct.

Q. Are you aware of any request from [Myers] to do so?

A. No, I'm not.

Q. And you didn't actually talk to [Myers]?

A. Not until processing and during processing he didn't want to make any statements.

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: What's the objection?

[DEFENSE COUNSEL]: Comments on his right to invoke, Your Honor.

THE COURT: Can you repeat the question? I want to make sure I heard it right.

[PROSECUTOR]:

Q. You didn't have any -- you didn't speak to [Myers] afterwards?

A. Other than small talk, nothing pertaining to the case.

THE COURT: Yeah, I'm going to overrule that objection.

¶16 Myers asserts the questions and answers constituted an improper comment on his Fifth Amendment right to remain silent and, thus, amounted to prosecutorial misconduct. We disagree.

¶17 The prosecutor's questions about Officer Ross's communication with Myers were not intended to elicit testimony commenting on his right to remain silent, and the jury would not "naturally and necessarily perceive [Ross' testimony] to be a comment on the failure of the defendant to testify." *State v. Schrock*, 149 Ariz. 433, 438, 719 P.2d 1049, 1054 (1986). Rather, the question, which drew the objection and only required a simple "no" answer, was asked to rebut the cross-examination of Officer Ross that implied that he ignored Myers' request to search for the

vehicle asserted to be the source of the battery. Considered in this context, the questions did not elicit testimony that supported an unfavorable inference of Myers' guilt. *See id.* (noting statements regarding a defendant's silence must be examined in context to determine if they unconstitutionally "support[] an unfavorable inference against the defendant."). However, even if there was an impropriety as a result of Officer Ross' unsolicited commentary, it cannot be attributed to the prosecutor, and Myers does not provide any controlling authority that would lead us to a contrary conclusion.[5] Consequently, no prosecutorial misconduct occurred. [6]

**¶18** Because no misconduct occurred in any of the three individual instances, no cumulative misconduct occurred.[7] *See State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75, 189 P.3d 403, 419 (2008) ("Absent any finding of misconduct, there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness.").

---

[5] The cases Myers relies upon all concern prosecutors who arguably commented upon a defendant's silence or engaged in other misconduct. *Donnelly v. DeChristoforo*, 416 U.S. 637, 640 (1974); *Griffin v. California*, 380 U.S. 609, 610-11 (1965); *State v. Trostle*, 191 Ariz. 4, 16, 951 P.2d 869, 881 (1997); *State v. Schrock*, 149 Ariz. 433, 438, 439, 719 P.2d 1049, 1054, 1055 (1986); *State v. Decello*, 113 Ariz. 255, 258, 550 P.2d 633, 636 (1976); *State v. Martinez*, 130 Ariz. 80, 82, 634 P.2d 7, 9 (App. 1981).

[6] Because the prosecutor did not comment on Myers' silence, we do not address Myers' argument that the Arizona Constitution provides broader protections against self-incrimination than does the Fifth Amendment. *See* Ariz. Const. art. 2, § 10 ("No person shall be compelled in any criminal case to give evidence against himself . . . .").

[7] To the extent the parties disagree as to whether we review for fundamental error or an abuse of discretion, we need not decide which standard of review to apply because we conclude no error, fundamental or otherwise, occurred. *See State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342, (1991) ("Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error.").

## II.     *Willits* **Instruction**

**¶19**        Myers requested a *Willits* instruction based on the State's failure to preserve the battery for trial.[8] The court denied the request. After hearing the officer's explanation that the battery was not impounded for safety reasons and returned to its owner, the court accepted the explanation and noted that photographs of the battery taken at the time of the incident were introduced into evidence; thus, the absence of the physical battery did not prejudice Myers.

**¶20**        We review a court's decision regarding a *Willits* instruction for an abuse of discretion. *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 7, 329 P.3d 1049, 1052 (2014). If a trial court properly denies a request for a *Willits* instruction, but does so for the wrong reason, "[w]e are obliged to affirm the trial court's ruling if the result was legally correct for any reason." *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984) (citations omitted).

**¶21**        "A *Willits* instruction is appropriate when the state destroys or loses evidence potentially helpful to the defendant." *State v. Lopez*, 163 Ariz. 108, 113, 786 P.2d 959, 964 (1990). The instruction informs jurors that they may infer from the absence of the evidence that it would have been unfavorable to the State. *State v. Fulminante*, 193 Ariz. 485, 503, ¶ 62, 975 P.2d 75, 93 (1999). Specifically, the instruction states:

> If you find that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in this case, then *you should weigh the explanation, if any, given for the loss or unavailability of the evidence*. If you find that any such explanation is inadequate, then you may draw an inference unfavorable to the State, which in itself may create a reasonable doubt as to the defendant's guilt.

Rev. Ariz. Jury Instr. Stand. Crim. 10 (emphasis added).

---

[8] Myers also requested the instruction as applicable to the wire cutters he was carrying when arrested. The State learned later that day that the police had impounded the tool, and it was available for inspection. Accordingly, the court refused the requested instruction, and Myers does not argue the court erred in doing so.

¶22        However, a defendant is not automatically entitled to a *Willits* instruction when evidence is lost or destroyed. *State v. Murray*, 184 Ariz. 9, 33, 906 P.2d 542, 566 (1995). Further, a *Willits* instruction is not required merely because a more thorough or exhaustive investigation could have been undertaken by the State. *Id.* (citation omitted); *see also State v. Davis*, 205 Ariz. 174, 180, ¶ 37, 68 P.3d 127, 133 (App. 2002) *as amended* (April 23, 2003) ("[I]n general, the state does not have a duty to seek out or preserve potentially exculpatory evidence for the defendant when they have developed sufficient evidence against him."). Before a *Willits* instruction must be given, the defendant must prove that the State failed to preserve evidence that is material, accessible, and which might tend to exonerate the defendant. *Murray*, 184 Ariz. at 33, 906 P.2d at 566. There is no abuse of discretion in denying a request for a *Willits* instruction if a defendant fails to establish the evidence would have had a tendency to exonerate him. *Id.* Further, a defendant must prove that prejudice resulted from the failure to preserve the evidence. *Id.*

¶23        Although we agree with Myers that the court improperly considered the reason proffered by the officers for failing to impound the battery, we find no abuse of discretion. The State offered photographs of the battery and its wires, the functional equivalent of the actual battery, and Myers was able to argue that the failure of the State to produce the battery was sufficient to find reasonable doubt, given that the photos were taken from far away and the jurors could not see for themselves whether the wire cutters could indeed cut the wires. Thus, the lack of a *Willits* instruction "did not preclude defense counsel from arguing the substance of that instruction to the jury." *Perez*, 141 Ariz. at 464 n. 6, 687 P.2d at 1219 n. 6.

¶24        Moreover, Myers did not satisfy his burden of establishing the battery had any exculpatory value. Instead, he only speculated that "being able to examine [the] wires [that were attached to the battery], and compare them to the wire cutters seized by police, would potentially exonerate [him]." The jury, in reaching its decision, had to consider the testimony, the credibility of the witnesses, as well as the photographs. Speculation about the missing battery's "tendency to exonerate" is insufficient to warrant a *Willits* instruction. *Glissendorf*, 235 Ariz. at 150, ¶ 9, 329 P.3d at 1052.

¶25        Finally, the record does not indicate Myers was prejudiced by the jury's inability to physically examine the battery and the attached, cut wires. The photographs were the functional equivalent of having the battery present. And given that Myers had the ability to cross-examine the officers and victim, and argue about the quality of the photographs and the

inability of the jury to see the battery for themselves, we find no prejudice. Consequently, we find no abuse of discretion.

## III. Sentencing

**¶26** Myers argues the superior court erred by sentencing him as a repetitive offender. Under A.R.S. § 13-703(C), "a person shall be sentenced as a category three repetitive offender if the person . . . stands convicted of a felony and has two or more historical prior felony convictions."[9]

**¶27** Before sentencing, Myers moved to strike the State's allegations of four historical prior felony convictions on the basis that the offenses underlying the convictions were committed in another state and were outside the five-year time limit set forth in A.R.S. § 13-105(22)(e) (defining "historical prior felony conviction" in relevant part as: "Any offense committed outside the jurisdiction of this state that was punishable by that jurisdiction as a felony and that was committed within the five years immediately preceding the date of the present offense."). He argued that A.R.S. § 13-105(22)(d), which, at the time the offenses in this case were committed in 2014, defined "historical prior felony conviction" as "[a]ny felony conviction that is a third or more prior felony conviction," was inapplicable because that provision did not specifically refer to foreign convictions. *See State v. Newton*, 200 Ariz. 1, 2, ¶ 3, 21 P.3d 387, 388 (2001) ("A basic principle of criminal law requires that an offender be sentenced under the laws in effect at the time he committed the offense for which he is being sentenced.").

**¶28** In support of his assertion that the legislature did not intend foreign convictions to be considered historical prior felony convictions under § 13-105(22)(d), Myers noted that other subsections in § 13-105(22) specifically refer to prior foreign convictions, yet subsection (d) did not. *See* A.R.S. § 13-105(22)(e), (f) (2014). He also pointed out that the legislature in 2015 added the following to § 13-105(22)(d): "For the purposes of this subdivision, 'prior felony conviction' includes any offense committed outside the jurisdiction of this state that was punishable by that jurisdiction as a felony." *See* 2015 Ariz. Sess. Laws, ch. 74, § 1 (Reg. Sess.). This amendment, according to Myers, further indicated the legislature's intent

---

[9] The legislature revised portions of § 13-703 that were effective August 6, 2016. 2016 Ariz. Sess. Laws, ch. 43, § 2 (2nd Reg. Sess.). Those revisions are immaterial for purposes of this decision.

before 2015 that § 13-105(22)(d) did not apply to foreign convictions. The trial court disagreed and denied the motion.

**¶29**     Myers also argues that the § 13-105(22)(d), as it existed before 2015, applied only to Arizona prior convictions, and not foreign convictions. We recently addressed the same argument and found it unpersuasive given the 2012 amendments to § 13-703(M), and the language in § 13-105 that the definitions would control "unless the context otherwise require[d]." *See State v. Johnson*, 1 CA-CR 15-0351, 2016 WL4482858 (Ariz. App. Aug. 25, 2016).[10] For the reasons stated in *Johnson*, we conclude that the plain language in § 13-703(M) - "*Any* felony conviction that is a third or more prior felony conviction[]" (emphasis added) unambiguously indicated a legislative intent before 2015 to treat foreign felony convictions (and Arizona convictions) as "historical prior felony convictions" under § 13-105(22)(d).[11] As a result, the court did not err in sentencing Myers as a category three repetitive offender. *See* A.R.S. § 13-703(C).

## CONCLUSION

**¶30**     We affirm Myers' convictions and sentences.



Amy M. Wood • Clerk of the court
FILED:  AA

---

[10] *Johnson* was published after the briefs in this case were filed.

[11] Because we find pre-2015 § 13-105(22)(d) unambiguous, we need not address Myers' arguments that apply other rules of statutory construction. *See Valerie M. v. Arizona Dep't of Econ. Sec.*, 219 Ariz. 155, 158, ¶ 11, 195 P.3d 192, 195 (App. 2008) ("If the statutory language is unambiguous, we must give effect to the language and do not use other rules of statutory construction in its interpretation.") (quoting *Primary Consultants, L.L.C. v. Maricopa Cty. Recorder*, 210 Ariz. 393, 399, ¶ 24, 111 P.3d 435, 441 (App.2005)).