863 P.2d 861

**STATE of Arizona, Appellee,**

v.

**Graham Saunders HENRY, Appellant.**

No. CR–88–0123–AP/PC.

Supreme Court of Arizona.

Nov. 12, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

DeConcini McDonald Brammer Yetwin & Lacy by Wayne E. Yehling, Tucson, for appellant.

## AMENDED OPINION

ZLAKET, Justice.

On June 6, 1986, a highway patrolman stopped a pickup truck going the wrong way down Highway 93. In it were defendant, Graham Saunders Henry, and his passenger, Vernon Foote. Henry, who identified himself as "Harold Williams," was arrested for driving under the influence of intoxicating liquor.

A check on the truck showed that it was registered to a Las Vegas man. In the back of the truck were several rifles, VCRs, and stereos. Henry told the arresting officer that he had paid a friend $50 to borrow the vehicle and that the items in the back belonged to its owner. The officer later testified that both men had obviously been drinking, and that Foote was lying on the ground at the scene of the traffic stop in an "extremely intoxicated" condition.

The two men were transported to the Kingman Office of the Department of Public Safety (DPS). There, authorities determined that the truck's owner, a 55–year–old invalid, had been reported missing from Las Vegas. The report indicated that earlier in the day, two suspects had taken the man from his apartment complex under apparently forced circumstances.

Henry (who was still known as "Williams") was questioned during the early morning hours of June 7 at the Mohave County Sheriff's Office. At that time, he

denied any knowledge of the owner's whereabouts. He said that Foote had arranged with the owner to use the truck. According to the interrogating officer, Henry said he "wasn't sure" if the owner was in the truck when they left Las Vegas.

The next day, June 8, officers learned of an outstanding California warrant suggesting that "Harold Williams" might actually be Graham Saunders Henry. A detective went to the jail and addressed defendant as "Mr. Henry." At that point, defendant made statements to the effect, "You know who I am, I knew this was going to happen." He then immediately and profusely began to volunteer how he had watched Foote kill the truck's owner and that he was not going to "take the beef for him." He told how he had been sleeping in the back of the truck while Foote drove to the desert area where the crime occurred. He said Foote turned off the highway down a dirt road, dragged the victim out of the truck and up a berm on the side of the road and stabbed him. Henry then led the officers to the scene of the murder, near the location where he and Foote had originally been stopped.

Henry and Foote were tried separately. Evidence at Henry's trial indicated that he had encountered Foote, a prior acquaintance, in the Sacramento area and that they decided to leave the state together. Henry denied running from the outstanding California warrant, maintaining that he simply "decided it was time to change states." Before doing so, the two men—driving Henry's truck—stopped at the house of a person Henry claimed owed him money and took the items later found in the back of the victim's truck.

Henry testified that he and Foote drank heavily during the trip. His truck broke down and was towed to a bar near Las Vegas. The tow truck driver testified at trial that Foote "was worse off. Henry seemed to have grasp on what was going on. He was real coherent but [Foote] wasn't."

Henry claimed that Foote left the bar and upon returning announced that the victim would drive them to Kingman, Arizona for $50. He said they went to the victim's apartment complex, which was near the bar. He asserted that the victim was waiting for them in his truck. As the three men left the complex, the victim waved to the apartment manager to—according to Henry—"tell her he wouldn't be late."

Henry claimed that he soon got into the truck camper and went to sleep, apparently leaving the highly intoxicated Foote to drive. He allegedly woke up when the truck left the highway and he heard Foote and the victim arguing. They proceeded about a mile down a dirt road, where Foote pulled over and stopped. Henry testified that he then saw Foote dragging the victim backwards up a berm alongside the road. By the time he was able to get out of the camper, he said, he saw Foote pulling a knife out of the victim. Henry claimed that he leaped up the berm to help the victim, and dragged him toward the shade. When he realized the man was dead, he ran back to the truck and drove off. Foote jumped in the passenger side and washed off the knife with whiskey. When they were stopped by the highway patrol, Henry didn't tell the officers about the killing because he'd "go right to jail myself; lose everything."

The manager at the victim's apartment complex testified that on June 6 she saw the victim between two men, and that he was crying and calling out to her. She immediately notified the police, who arrived 6½ hours later. A friend from the victim's church testified that he never saw anyone else drive the man's truck. This friend also said, without objection from the defense, that the victim surely would not have given anyone a ride of a hundred miles.

An expert tracker testified for the state that footprints depicted in photographs of the crime scene matched those of both Henry and Foote. He stated that two individuals supported the victim on either side and dragged him up the berm, as evidenced by toe marks and front-facing footprints located on either side of them. The victim had been stabbed near a bush, which was cov-

ered with blood. The footprints established that Henry thereafter dragged the body behind a larger bush, where it was hidden from the roadway.

A forensic serologist testified that no blood was found on Foote's clothes. Henry's clothes, however, were spattered with blood, some of which could have come from the victim, Foote, or Henry himself. The record does not reflect that either Henry or Foote suffered any injuries.

Henry was convicted of first-degree murder, kidnapping, theft and robbery. He was sentenced to death for the murder, and to 21 years for the kidnapping, 15 years for the theft, and 8 years for the robbery, all consecutive to the death sentence. He filed a petition for post-conviction relief, which was denied.

## TRIAL ISSUES

### I. FOOTE'S STATEMENTS AGAINST INTEREST

Henry sought to admit, under Rule 804(b)(3), Ariz.R.Evid., the following portions of a recorded statement that Foote gave to a detective six months after the murder:

Foote: Okay. He [the victim] got outa the truck an' had my arm aroun' him, uh, I believe he had his arm aroun' my shoulder.

Patterson: You had—what arm did he have around your shoulder?

Foote: His right arm. He was on my left side I recall. An' we left the berm, walked him up to the spot, helped set him down.

Patterson: Okay. When you say the spot, that's up the berm, inta the desert about twenty feet ...

Foote: point—point A where the blood was.

Patterson: Okay. You helped him all the way there by yourself?

Foote: Yes.

Patterson: Okay. Ho—how do ya know that?

Foote: Uh, because I recall HENRY talking ta me from behind.

Patterson: You mean jist immediately behind you or?

Foote: Uh, I don't recall how far. Uh, he—he coulda still been settin' in the truck.

Patterson: Okay. So he—in—in your mind, he was maybe back by the truck?

Foote: Yes.

Patterson: Okay. An' then what did you do, jis' drop the ol' man?

Foote: No, I jis'—I jis' help set him down an' he—if I recall, he was kina down an' wa' holdin' (inaud.) isself up wi' one elbow.

The trial judge refused to admit these excerpts in evidence. The issue before us is whether he abused his discretion. *United States v. Poland,* 659 F.2d 884, 895 (9th Cir.1981); *State v. Grijalva,* 137 Ariz. 10, 14, 667 P.2d 1336, 1340 (Ct.App.1983).

Henry argues that these were statements against Foote's interest. Three elements must exist to admit a statement against the declarant's interest offered to exculpate the accused: (1) the declarant must be unavailable; (2) the statement must have been "at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true"; and (3) "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Rule 804(b)(3), Ariz. R.Evid.; *State v. Lopez,* 159 Ariz. 52, 764 P.2d 1111 (1988); *State v. LaGrand,* 153 Ariz. 21, 734 P.2d 563 (1987); *State v. Mejias,* 163 Ariz. 531, 789 P.2d 398 (Ct.App. 1990).

The first two elements are met. The record supports the trial judge's finding that Foote was unavailable because he would have asserted his 5th Amendment privilege if called upon to testify. *See Lo-*

*pez,* 159 Ariz. at 54, 764 P.2d at 1113. The state also concedes that Foote's statements sufficiently tended to subject him to criminal liability.

Because the third element is lacking, however, we hold that the trial judge did not abuse his discretion in excluding the statements. The only corroborating evidence was Henry's self-serving testimony that Foote alone dragged the victim backwards up the berm. Without more, and in the face of substantial contradictory evidence, such testimony is generally insufficient to meet the corroborating circumstances requirement. *See United States v. Rodriguez,* 706 F.2d 31, 40 (2d Cir.1983) (applying Rule 804(b)(3), Fed.R.Evid.); *United States v. Tovar,* 687 F.2d 1210, 1213–14 (8th Cir.1982) (same); *Grijalva,* 137 Ariz. at 14–15, 667 P.2d at 1340–41. Virtually all of the other evidence contradicted Foote's statements, including the tracker's uncontroverted testimony that two people supported the victim as they dragged him forward up the berm, as demonstrated by the front-facing footprints on either side of the toe drag marks at the scene; the blood on Henry's clothes and lack of it on Foote's clothes; and Foote's extreme intoxication at the time, which casts considerable doubt on his recollection of the events and on the likelihood that he stabbed the victim without getting any blood on himself.

Foote's statements were neither spontaneous, nor were they ever repeated. They were made months after the crime during questioning by police. They were not said to anyone close to Foote (to whom such admissions might be more naturally expected). Furthermore, the record suggests that Foote fabricated the statements because Henry had threatened him and his family.

Our conclusion might be different had Foote admitted killing the victim, or unequivocally stated that Henry was asleep in the back of the truck when he decided to drag the man into the desert and kill him. But here Foote simply surmised, prompted by a detective's suggestion, that when he helped the victim up the berm, Henry "coulda" "maybe" been back as far as the truck because he remembered hearing his voice from behind. *See United States v. Perez,* 963 F.2d 314, 316 (10th Cir.1992) (statement that tended to incriminate declarant, but not necessarily exculpate defendant, properly excluded). While the issue of trustworthiness raises questions of veracity, reliability and credibility, which are traditionally reserved to the finder of fact, *LaGrand,* 153 Ariz. at 28, 734 P.2d at 570, we conclude here that no reasonable person could have believed Foote's statements under the circumstances. *Id.; State v. Lopez,* 159 Ariz. at 54–55, 764 P.2d at 1113–14.

Additionally, Foote's statements would not have exculpated Henry from the felony murder charge because we have concluded elsewhere in this opinion that the underlying felony convictions are supported by substantial evidence.

## II. SUFFICIENCY OF THE EVIDENCE

Henry argues that the trial judge erred in failing to grant his Rule 20 motion for acquittal on the murder, kidnapping and robbery charges. We disagree. For each crime, the record contains sufficient evidence to support the verdict of guilt beyond a reasonable doubt. *State v. Mathers,* 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990).

Testimony from the apartment manager concerning the victim's obvious distress; the unlikelihood that this physically disabled victim would have offered to drive someone a hundred miles; and the evidence that two people, one of whose footprints matched Henry's, dragged the man up the berm, support the kidnapping [1] charge. This proof, coupled with testimony from an officer that the victim's wallet

---

1. "A person commits kidnapping by knowingly restraining another person with the intent to: ... 3. Inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or ... 6. Seize or exercise control over any ... vehicle." A.R.S. § 13–1304(A).

was found on the highway near the scene, and the fact that Henry admitted driving off in the victim's truck immediately after the murder, also supports the robbery[2] charge. The same evidence additionally provides adequate basis for the felony-murder conviction. The trial court correctly denied Henry's motion.

■ On the theft conviction, we find sufficient evidence that the value of the victim's truck was more than $1000, supporting a class 3 felony under A.R.S. § 13–1802(C), in effect at the time of the crime. The victim's friend, a mechanic who had worked on the truck several times, testified that it was worth $1500 to $2000. Henry's failure to object to the witness' qualifications precludes the issue on appeal. *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). In any event, however, based on the witness' experience and training as a mechanic, it was not error to admit his opinion as to the truck's value. Rule 702, Ariz.R.Evid.

## III. THE NEW TRIAL MOTION

We further find no error in the denial of Henry's new trial motion alleging that the verdicts were against the weight of the evidence. *State v. Serna,* 167 Ariz. 373, 374, 807 P.2d 1109, 1110 (1991) (abuse of discretion standard). The facts outlined above, viewed in a light most favorable to sustaining the verdicts, *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987), were clearly sufficient.

## IV. SUPPRESSION ISSUE

Henry was arrested at the scene of his traffic stop and was advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) approximately 45 minutes later at the DPS office. He contends that he had not knowingly and intelligently waived his rights when Detective Patterson interviewed him at the Mohave County Sheriff's Office approximately six hours later. Henry argues

that because he was tired and feeling the residual effects of intoxication, the officer should have readvised him of his rights before the interview. He also specifically complains that the trial court should have suppressed his statements to Patterson denying knowledge of the victim or his whereabouts—statements Henry claims that the state relied on as "strong evidence of his guilt."

■ We find no error in the determination that Henry knowingly, intelligently, and voluntarily waived his rights after having been fully advised of them. *See State v. Jimenez,* 165 Ariz. 444, 449, 799 P.2d 785, 790 (1990) (standard of review). Officer Racine testified that when he advised the defendant of his *Miranda* rights 45 minutes after the arrest, Henry responded that he had heard them plenty of times before and knew them better than the officer did. Racine questioned Henry for a short time, after which the defendant was taken to the jail and booked. Henry never invoked his right to remain silent or asked for an attorney. No promises, threats or coercion were used. Although Henry was under the influence of alcohol when advised of his rights, the evidence establishes that he was oriented and responsive.

■ Further warnings were not required for the Patterson interview six hours later, absent circumstances in the interim suggesting that Henry was not fully aware of his rights. *See State v. Noriega,* 142 Ariz. 474, 480, 690 P.2d 775, 781 (1984), *overruled on other grounds, State v. Burge,* 167 Ariz. 25, 28 n. 7, 804 P.2d 754, 757 n. 7 (1990). No such circumstances appear here. Though evasive, Henry's answers to Patterson's questions were clear and without limitation. Despite Henry's claim of being tired, the transcript does not suggest that he was unaware of his rights. The six-hour interlude during which he was booked and slept did not warrant readvising. *See State v. Gilreath,* 107 Ariz. 318,

---

**2.** "A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13–1902(A).

319, 487 P.2d 385, 386 (1971) (12– and 36–hour gaps between interrogations).

## V. SPEEDY TRIAL

We reject Henry's claim that his speedy trial rights were violated. Rule 8.2(b), Ariz.R.Crim.P. required that he, a person in custody, be tried within 120 days from indictment or 90 days from arraignment, whichever was less. He was indicted on June 12, 1986 and arraigned on June 20, 1986.

Trial was originally scheduled for August 11, 1986 (52 days after arraignment), but did not start until November 24, 1987 (522 days after arraignment). A careful review of the record, however, demonstrates that 432 days are excludable from the speedy trial calculation because they were either occasioned by Henry or on his behalf, Rule 8.4(a), or resulted from his requests for trial continuances, Rules 8.4(d), 8.5. Trial, therefore, began on the 90th day after arraignment, as the state argues and we have independently verified.

Henry does not challenge these mathematical computations as being incorrect. His argument is directed instead at the exclusion of certain time periods from the calculation. He complains that on five of the occasions when he requested continuances, no written motion was filed as required by Rule 8.5(a), but that the court postponed trial based on the avowed intention of his attorney to file an appropriate motion. He also takes issue with the judge's failure to state on these occasions that "extraordinary circumstances" existed and that each continuance was "indispensable to the interests of justice" as required by Rule 8.5(b).

 In our view, the trial judge did not abuse his discretion in granting these continuances, even though they might not all have followed the technical letter of Rule 8.5. *State v. Lukezic,* 143 Ariz. 60, 68, 691 P.2d 1088, 1096 (1984) (standard of review). While Rule 8 affords defendants

a procedural right, "it is not a shield by which the accused may avoid trial and possible punishment by taking advantage of loopholes in the law or arithmetical errors." *State v. Guerrero,* 159 Ariz. 568, 570, 769 P.2d 1014, 1016 (1989). Similarly, a defendant who requests a trial continuance and has it granted cannot thereafter complain that it was improper because he failed to file a written request or that it was not in the interests of justice. *See, State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 340, 529 P.2d 686, 691 (1974) ("It is not the purpose of the speedy trial provision to enable the guilty to go free on technicalities."). In this case, Henry's innumerable motions and pleadings prompted many continuances, almost all of which he requested and characterized as necessary and indispensable. In every instance save one, for which we have *included* the excess days in our calculation, trial was continued for less than 30 days. The delay occasioned by these continuances has been properly excluded from the Rule 8 computation.

Henry also complains that the court took too long to hear his motion to suppress. The hearing on this, and myriad other motions, covered five separate days over the course of about five months. Henry fails to mention that during those months, he filed four requests for trial continuances which were granted, and submitted numerous other pre-trial motions which delayed trial so the judge could rule on them. Except for delays of 4, 28, and 6 days respectively, which we have included in the Rule 8 calculation, all others were occasioned by Henry and have been properly excluded.[3]

 The speedy trial provisions of the federal and state constitutions do not provide a specific time limit within which trial must be held. They simply state that criminal defendants have the right to a speedy and public trial. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. The factors applied under the federal constitution to determine whether delay warrants reversal are: (1) length of the delay, (2)

---

**3.** Henry did not file a Rule 8 motion to dismiss until August 27, 1987, over a year after the original trial date. Our resolution of this issue

on other grounds obviates the need to address the state's waiver argument.

reasons for it, (3) defendant's assertion of the right, and (4) resulting prejudice. *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101, 117 (1972); *State v. Schaaf*, 169 Ariz. 323, 327, 819 P.2d 909, 913 (1991). The least important factor is the length of delay. The most important is its prejudicial effect. *Schaaf*, 169 Ariz. at 327, 819 P.2d at 913.

 We find no constitutional violation. Although the overall delay from Henry's arraignment to his trial was lengthy, the record shows no prejudice to his ability to mount a defense. To the contrary, his vigorous defense caused much of the delay. In addition to the many pre-trial motions, delays occurred because Henry requested and was given three different lawyers. He moved for, but was denied, two more continuances the week before trial in an attempt to marshal witnesses whose relevance was questionable. That these delays were largely of his own making overrides the fact that he was incarcerated and assertedly felt increasing anxiety as trial drew near. Finally, Henry did not assert his rights until 14 months after indictment and three months before trial.[4]

## VI. THE ARREST WARRANT

[15] Henry argues that the trial judge erred in admitting evidence that he was wanted on an outstanding California warrant at the time of his arrest. Only the existence of the warrant was permitted in evidence. All details concerning it, and the alleged conduct on which it was based, were excluded by the court. We find no error.

Rule 404(b), Ariz.R.Evid., allows evidence of other crimes, wrongs, or acts to prove motive. Existence of the warrant was relevant to show that Henry had a motive for leaving California and commandeering the victim's truck after his own broke down. Moreover, evidence of prior bad acts is admissible to "complete the story." *State v. Villavicencio*, 95 Ariz. 199, 201, 388 P.2d

245, 246 (1964). Here, the warrant explained how officers finally learned of Henry's true identity, and of the murder itself. Two days after Henry's arrest, a detective confronted him with his true name following receipt of information on the outstanding warrant. At that point, Henry immediately abandoned his professed ignorance of the victim, volunteered information about the crime, and offered to take the officers to the scene—at a time when they had not known of the murder or the location of the body.

The jury was also given the following limiting instruction:

> Evidence has been presented in this case tending to show that the Defendant may have committed crimes other than those with which he is presently charged. Such evidence was not presented and may not be considered to show that the Defendant is a bad person or that he has a disposition to engage in criminal activity.

Under the circumstances, the trial court did not abuse its discretion in admitting this evidence. *See State v. Amaya–Ruiz*, 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990) (standard of review).

## VII. EVIDENCE OF HENRY'S SILENCE

The arresting officer testified that Henry said nothing about the killing when he was stopped on the highway. The state argued in closing that in view of this failure to volunteer information, Henry's story of innocence at trial didn't "make sense." Henry claims that the evidence and argument (1) violated his right to remain silent, (2) were irrelevant and therefore inadmissible under Rule 401, Ariz.R.Evid., and (3) impermissibly impeached the exculpatory version of events that he gave on the witness stand.

 The state cannot impeach a testifying defendant with his post-arrest si-

---

**4.** Although Henry asserts that he "personally opposed continuances as early as September of 1986," the pleading to which he refers does not hint of a speedy trial objection. In any event, delays sought by defense counsel bind the client. *See State v. Zuck*, 134 Ariz. 509, 515, 658 P.2d 162, 168 (1982).

lence if it was or could have been in response to *Miranda* warnings. *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976) (violation of defendant's due process rights); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (silence following *Miranda* warnings ordinarily so ambiguous as to have little probative value). When a defendant is not induced into silence by *Miranda* warnings, however, or waives his rights by answering questions after such warnings are given, due process is not implicated. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (silence not induced by *Miranda* warnings); *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (rights waived by post-arrest statement).

■ Here, Henry's due process rights were not violated. This case does not involve "silence" induced by *Miranda* warnings. At no time, either before or after having been given such warnings, did Henry choose to remain silent, or otherwise invoke his constitutional right to do so. On the contrary, he talked freely. The stories he told, however, were vastly different from one another. At the scene of the traffic stop, and before any *Miranda* warnings were given, Henry volunteered information about the items in the back of the truck. He stated that he had paid the owner $50 to borrow the truck and that he had to return it by 9:00 that night. He also gave a false name. Later, after having been told of his right to remain silent, he repeated the same basic story at the DPS office.

Once confronted with his true identity, however, he gave a totally different version of the facts, including details about how Foote allegedly committed the killing. This was the first time he mentioned the murder. It is also the story he repeated at trial.

The fact that Henry was "silent" *about the murder* during the early versions he gave the police does not mean that his constitutional right to remain silent was violated by the later mention of those statements, which were clearly inconsistent with

what he said at trial. As the United States Supreme Court stated in *Anderson,* "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* [*v. Ohio* ] does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case." 447 U.S. at 409, 100 S.Ct. at 2182, 65 L.Ed.2d at 227.

There are no constitutional implications here. Thus, this issue becomes one of state evidentiary law. *Fletcher,* 455 U.S. at 607, 102 S.Ct. at 1312, 71 L.Ed.2d at 494. We find no error under the facts as presented. *See State v. Tuzon,* 118 Ariz. 205, 207, 575 P.2d 1231, 1233 (1978) (defendant testified to self-defense at trial; was impeached with failure to mention self-defense during post-arrest statement); *State v. Raffaele,* 113 Ariz. 259, 263, 550 P.2d 1060, 1064 (1976) (prosecutor's comments on defendant's credibility permissible); *Cf. State v. Benton,* 109 Ariz. 427, 428–29, 510 P.2d 743, 744–45 (1973) (no fundamental error in asking defendant if he had told ·anyone besides arresting officer of his innocence).

■ Because the evidence was relevant only as impeachment, the state should not have elicited the testimony in its case-in-chief. Since it could have done so on cross-examination, however, and did do so on rebuttal, the error does not require reversal. *State v. Villarreal,* 126 Ariz. 589, 590, 617 P.2d 541, 542 (1980) ("admission by silence" adduced in state's case-in-chief harmless error).

## VIII. CALLING FOOTE TO TESTIFY

The defense sought to call Foote to the stand so that he would have to claim the privilege against self-incrimination in front of the jury. It wanted the jury to infer Foote's guilt from the exercise of this privilege. The trial judge denied the request. We find no abuse of discretion. *State v. Corrales,* 138 Ariz. 583, 588, 676 P.2d 615, 620 (1983).

■ A person who can legitimately refuse to answer questions on the stand

may be excused from being called as a witness without violating defendant's Sixth Amendment right to compulsory process. *State v. McDaniel*, 136 Ariz. 188, 194, 665 P.2d 70, 76 (1983). Here the record supports the trial judge's finding that Foote would have invoked the Fifth Amendment if called to testify. The jury would not have been permitted to infer Foote's guilt from his silence. *Id.* Thus, no "material and favorable evidence" was lost when the trial judge denied Henry's request to put Foote on the stand. *Id.* at 195, 665 P.2d at 77.

## IX. SURREBUTTAL TESTIMONY

At trial, Henry claimed that the state had confused some of his boot prints with those of an investigating detective. He alleges here that the state's tracker offered new evidence in rebuttal—the position of Henry's footprint near a drag mark up the berm—and that he therefore should have been allowed surrebuttal testimony.

■ The court did not abuse its discretion. *State v. Young*, 116 Ariz. 385, 387, 569 P.2d 815, 817 (1977). The tracker testified on direct examination that two sets of footprints, matching those of Henry and Foote, were photographically depicted along the drag marks from the berm to the bush. He also said that a coyote print was located on *top* of one of the boot prints on the berm, indicating that the boot print was placed there *before* the photographs were taken by investigators (i.e., an investigator most probably could not have made the print). Henry testified that Foote dragged the victim *backwards* up the berm. On rebuttal, the tracker testified that the footprints were facing forward, and repeated that one heeled footprint in the area had a coyote print in it. There was nothing new about this evidence, and no need for surrebuttal.

## X. PROSECUTORIAL MISCONDUCT

### A. *Psychopath Remark*

In closing, the prosecutor stated, "When Mr. Henry was testifying all day Friday, did the word psychopath ever come to mind?" The trial judge sustained an objection to the remark, but denied a mistrial.

■ The court properly sustained the objection. Within the wide latitude of closing argument, counsel may comment on the vicious and inhuman nature of defendant's acts, but may not make arguments that appeal to the passions and fears of the jury. *State v. Comer*, 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990).

■ Denying the mistrial, however, was not an abuse of discretion. *See State v. Hansen*, 156 Ariz. 291, 297, 751 P.2d 951, 957 (1988) (standard of review). The record supports the judge's determination that this comment, made during nine days of testimony and arguments, over a total period of three weeks, did not influence the verdict and was not so egregious as to deny Henry a fair trial. *See State v. Dumaine*, 162 Ariz. 392, 403, 783 P.2d 1184, 1195 (1989).

### B. *Foote's Defense*

Henry also contends that the prosecutor committed fundamental error (because Henry failed to object) in arguing during closing that

> They were trying to get away only they didn't make it. That's why they resorted—both of them—to the basic defense you've got in this situation. The other guy did it. The evidence in this case shows they both did it. Mr. Foote and Mr. Henry are equally guilty of first degree murder.

He says it was inappropriate for the prosecutor to intimate that Foote had accused him, since he had no opportunity to cross-examine Foote during trial.

■ We find no error, fundamental or otherwise. At trial, Henry elicited testimony from a Mohave County Jail inmate who claimed to have overheard Foote say he was blaming Henry for the murder. Counsel may comment on evidence and argue all reasonable inferences therefrom. *Dumaine*, 162 Ariz. at 401, 783 P.2d at 1193. Even defense counsel argued that Henry and Foote were "pointing the finger at each other."

## C. *Vouching*

■■ Henry asserts, again claiming fundamental error, that the prosecutor improperly engaged in "vouching" by intimating in his rebuttal argument that "the system" doesn't put innocent people in jail. Improper vouching occurs when the prosecutor "places the prestige of the government behind its witness." *State v. Vincent*, 159 Ariz. 418, 423, 768 P.2d 150, 155 (1989).

■■ Again we find no error. The comments were invited. In his closing, defense counsel several times referred to a concept he called "double-dipping"—implying that the state would try to convict both Henry and Foote by arguing at each of their separate trials that the other was the "innocent" co-defendant. He then argued that this was how "the system" worked. Defense counsel also suggested that the state hoped its witnesses were more believable because they were police officers:

> So, you know, that's what we've got here. Graham Henry is a first degree murderer because of those the State says and we are police officers. We want this double dip. We want you to think he's a bad dude and a liar and oh, God, we are not lying. We are telling you the straight scoop.

In rebuttal, the prosecutor responded:

> He talked about double-bagging it. The police want both of them but they prefer one over the other. That sure says a lot about the police; about how our system works. It sure assumes that somehow we have the time to try a murder case twice; that somehow we get our kicks out of putting innocent people in jail. That is not the way the system works.

We find no prejudice here. *See State v. Vincent*, 159 Ariz. at 424, 768 P.2d at 156 (invited response doctrine encourages reviewing court to assess whether defendant was unfairly prejudiced).

## XI. INSTRUCTIONS ON MANSLAUGHTER AND NEGLIGENT HOMICIDE

■■ Henry claims that his testimony about having permitted Foote to drive to the crime scene in an extremely intoxicated condition raised the issue of whether he was reckless or negligent in leaving the victim alone with Foote. He says the trial judge should therefore have instructed the jury on manslaughter and negligent homicide. The argument is meritless. *See Dumaine*, 162 Ariz. at 403–404, 783 P.2d at 1195–96 (failure to instruct on manslaughter and negligent homicide not error absent evidence to support instructions). Even if the jury believed Henry's story, Foote's drunk driving had no bearing upon the manner in which the victim was murdered. The record lacks evidence that the victim was killed in a negligent or reckless manner.

## XII. ROBBERY INSTRUCTION

Henry contends the court erred in failing to instruct that robbery requires the co-existence of an intent to steal and the use of force. He also argues, without support, that the jury should have been told it could not find him guilty as an accomplice to robbery if his participation in any of the elements of that crime occurred after the victim's death.

■■ At trial, Henry did not object to the instructions on this basis. The issue, therefore, is precluded absent fundamental error. *State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). The record presents no such error. The jury was instructed on armed robbery as follows:

> The crime of Armed Robbery has six elements. In order to determine that the Defendant committed the crime of Armed Robbery, you must find that: ... number five, the Defendant threatened or used force with the intent either to coerce the surrender of the property or to prevent resistance to his taking or retaining the property; ....

The court also instructed as to robbery, the lesser included offense of which Henry was ultimately convicted. Element number five, common to both crimes, adequately informed the jurors of the co-existence requirement. Moreover, we have found sufficient evidence to support his robbery conviction as a principal. Henry was not de-

nied a fair trial on this basis. *Schrock*, 149 Ariz. at 440, 719 P.2d at 1056 (absent objection to instruction, case should be reversed only when instructions as a whole mislead jury).

## XIII. INQUIRY FROM THE JURY

 During deliberations, the jurors sent a note to the judge stating: "Is it kidnapping after [the victim] is removed from truck at crime scene?" After conferring with counsel, the judge responded: "Whether the defendant committed any one of the crimes with which he is charged is for you to decide applying the law in the instructions to the facts as you determine them from the testimony and exhibits." Henry's objection at trial to this response was that he wanted the judge to add, "only if you find that he did it as opposed to Vern Foote doing it."

The trial court properly replied to the jury's question. It was neither appropriate nor necessary to say more under these circumstances. Henry did not challenge the substance of the kidnapping instruction at trial. His present contention, that the trial judge should have answered the inquiry by stating that the defendant "must be acquitted if they believed (1) that the kidnapping began when the victim was dragged from his truck, and (2) that [Henry] neither committed that act nor was an accomplice to it," is unsupported by authority and without merit. We also note that such a comment might well have violated the prohibition found in Ariz. Const. art. VI, § 27. *See* Charles E. Davis, Comment, *Judge's Inability To Comment On The Evidence In Arizona*, 1973 Ariz. St.L.J. 119, 127 ("a decision by the court to recognize only the facts of one party, while ignoring those of another, violates the *no comment rule*"). We find no error here.

## XIV. DURESS INSTRUCTION

Henry argues that the trial judge erred in failing to instruct on the defense of duress. He claims that following the murder, he was compelled by his fear of Foote to flee in the victim's truck. Henry is precluded from raising this argument by his failure to have done so at trial, and the record here would not support such an instruction in any event. *State v. Gendron*, 168 Ariz. 153, 154–55, 812 P.2d 626, 627–28 (1991) (failure to assert justification defense or request instruction precludes issue on appeal). There is no error, fundamental or otherwise.

## XV. *WILLITS* INSTRUCTION

The court refused Henry's request for a *Willits* instruction with respect to the state's asserted failure to secure his truck. *See State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964) (if the state destroys evidence, the contents or quality of which are at issue, jury may infer that the true facts are against the state's interest). Henry argues that valuable tools in his truck were potentially helpful because they established a motive for him to return to Las Vegas.

 The trial judge did not abuse his discretion in denying the instruction. *See State v. Reffitt*, 145 Ariz. 452, 461, 702 P.2d 681, 690 (1985) (standard of review). To be entitled to a *Willits* instruction, a defendant must show (1) that the state failed to preserve material and reasonably accessible evidence having a tendency to exonerate him, and (2) that this failure resulted in prejudice. *Id.* That burden has not been carried here. Henry offered, and the court admitted, photographs of his truck and its contents. He testified to the valuable tools left behind. The tow truck driver verified that he saw many tools worth "a couple thousand dollars" in the back of Henry's truck. In closing, defense counsel argued that his client would not have killed the victim for a vehicle because his own truck, containing these valuable possessions, was in Las Vegas. Beyond this, the truck had no material exculpatory value.

## XVI. HENRY'S RIGHT TO REPRESENT HIMSELF

### A. *Use of the Law Library*

On November 12, 1987, the trial judge granted Henry's motion to represent himself. Henry then changed his mind and moved to withdraw his waiver of counsel

on November 20, 1987. That motion was granted November 23, 1987. Henry was represented by counsel at trial. He complains that during the foregoing 11–day period without counsel, his right to self-representation was unduly infringed because jail officials did not permit him an allotted 3 hours a day in the law library.

A criminal defendant has a constitutional right to represent himself. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). When a defendant in custody exercises that right, the Fifth Amendment guarantee of access to the courts requires that he or she be provided an adequate law library or assistance from someone trained in the law. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72, 83 (1977). *See also Findlay v. Lewis,* 172 Ariz. 343, 346, 837 P.2d 145, 148 (1992).

Here, no constitutional violation occurred. Library access is only one permissible means of affording the right of meaningful self-representation. Legal help is another. *United States v. Wilson,* 690 F.2d 1267, 1271 (9th Cir.1982) (due process does not require law library access for defendant who declines assistance of counsel). An inmate does not have the right to select his or her preferred means of access. *Id.* Due process rights are violated only when a defendant is denied *all* meaningful opportunity to prepare a defense. *Milton v. Morris,* 767 F.2d 1443 (9th Cir.1985) (defendant denied communication with outside world).

Henry was not denied *all* meaningful access. At the November 12 hearing on his request to represent himself, he expressly agreed to have his lawyer serve as his legal advisor. The trial judge granted Henry the right to represent himself, designated his previously-appointed lawyer as advisory counsel, authorized additional funds for Henry's investigator, granted him law library access for at least 3 consecutive hours a week, and continued the trial from November 16 to November 23. On November 19, the trial judge increased library access to 3 hours a day. On November 20, in addition to the motion to withdraw his prior waiver of counsel, Henry filed a handwritten Rule 10.1 motion to change the trial judge for cause, and a lengthy motion to continue trial.

The record conflicts as to whether Henry was denied library use, or was offered it and declined. Regardless, appointment of both advisory counsel and an investigator who in fact did extensive work afforded him the meaningful access required by the constitution. *See Wilson,* 690 F.2d at 1271. *See also Knight v. Superior Court,* 161 Ariz. 551, 779 P.2d 1290 (Ct.App.1989).

### B. *Due Process Right to Notice and Hearing*

Henry complains that he experienced difficulty receiving information about the case from his lawyer. He does not contend that the lawyer was ignorant of the status of his case, or that he missed any hearings or deadlines. Even assuming the truth of his assertions, the record lacks evidence that he was denied a fair trial, or that his due process rights were violated in any way.

### C. *New Trial Motion and Sentencing*

Following trial, Henry moved to "substitute counsel or in the alternative to represent himself." The court denied his motion. Nonetheless, Henry was allowed to file a 144–page handwritten motion for new trial in addition to that filed by defense counsel, and was permitted to participate at the ensuing oral argument. In connection with his ruling on the self-representation issue, the trial judge stated in part:

> I feel that at this point in the proceedings where the only thing left in this case is almost purely legal matters, I don't believe that there is any way that you can possibly under the consequences have self representation....

Henry argues that this ruling unconstitutionally denied him the right to represent himself.

We need not decide this issue, given our decision to remand for resentencing on other grounds. We note, however, that under *Faretta v. California,* 422 U.S. 806,

95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), a death-eligible defendant may represent himself at sentencing, *see Silagy v. Peters,* 905 F.2d 986, 1007 (7th Cir.1990), provided he or she understands the proceedings, the possible consequences, and the disadvantages of acting as his or her own attorney. *Harding v. Lewis,* 834 F.2d 853, 857 (9th Cir.1987). *See also State v. Harding,* 137 Ariz. 278, 286–87, 670 P.2d 383, 391–92 (1983).

In *State v. Martin,* 102 Ariz. 142, 146, 426 P.2d 639, 643 (1967) this court said:

> The fundamental question then is not one of the wisdom of defendant's judgment but whether the defendant's waiver of counsel was made in an intelligent, understanding and competent manner. The answer to this question must depend upon the particular facts and circumstances surrounding each case, including the background, experience and conduct of the accused. All factors relating to the determination of whether the defendant knew exactly what he was doing when he waived his right to counsel are relevant.

Lack of legal skill is not the test. *Id.*

The trial judge will have to make this determination should Henry again insist on representing himself at the resentencing proceeding.

## XVII. INEFFECTIVE ASSISTANCE OF COUNSEL

▆▆▆▆ Henry appeals the denial of his post-conviction petition alleging ineffective assistance of counsel. In this regard, he must prove by a preponderance of the evidence, *State v. Gerlaugh,* 144 Ariz. 449, 455, 698 P.2d 694, 700 (1985), that (1) counsel lacked minimal competence as determined by prevailing professional norms, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984); *State v. Valdez,* 167 Ariz. 328, 329–30, 806 P.2d 1376, 1377–78 (1991). There is a strong presumption of effective assistance. *Valdez,* 167 Ariz. at 329–30, 806 P.2d at 1377–78. On the record before us and for the following reasons, we find no error.

### A. *Failure to Investigate*

▆▆▆ Henry contends that his lawyers were ineffective because they did not obtain a scaled photo layout of the crime scene. At the Rule 32 hearing, a defense expert testified that the crime scene should have been photographed in a grid sequence to show spatial relationships. The expert, however, had no opinion whether such a photo layout would have proved or disproved Henry's version of the facts. Indeed, he conceded that an accurate depiction of the scene might "very possibly" have demonstrated that Henry was lying when he testified. There was no showing that the absence of such photographs affected the result here. *State v. Lee,* 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984).

Henry also complains that his lawyers did not obtain a tracker to counter the state's expert witness at trial, but he fails to show how this would have made a difference. The tracker who testified for him at the Rule 32 hearing did not voice the opinion that Foote dragged the victim up the berm by himself or that there was only one set of footprints next to the drag marks rather than two. He testified only that trackers normally read signs and do not interpret them. He also admitted on cross-examination that he was not saying that no one could interpret what had happened from photos of the scene. Defendant again fails to meet the *Strickland* test for ineffective assistance.

### B. *Failure to Preserve Items in Henry's Truck*

We have already determined that Henry failed to demonstrate prejudice warranting a *Willits* instruction because of the state's asserted failure to secure his truck. The same lack of prejudice dictates that defense counsel was not ineffective in failing to secure the vehicle or its contents.

### C. *Failure to Secure Potential Witnesses*

▆▆▆ Henry argues that his lawyers were ineffective for failing to locate vari-

ous witnesses in California and Nevada who allegedly saw Foote with a knife within a day of the murder or who saw the victim with Henry and Foote. His trial lawyer and a defense investigator both testified at the Rule 32 hearing that the witnesses either had nothing relevant to offer, or were unfavorable. The defense did not demonstrate otherwise. More importantly, Henry fails to show that the asserted testimony of these witnesses would likely have affected the outcome of this case. Our review of the record demonstrates no incompetence or prejudice in defense counsel's failure to secure witnesses.

### D. *Failure to Present Exculpatory Evidence*

Henry contends his counsel was ineffective in failing to call as a defense witness a jail inmate (Terry) who told the lawyer that Foote confessed to the murder.

 Counsel testified that he thought Terry was lying. He also said that (1) Terry was prone to change his mind and had lied before, (2) he could be impeached with 10 prior felonies, (3) based on his demeanor, the jury was not likely to believe him, (4) his testimony, coupled with Henry's testimony and demeanor, would not have been beneficial to the defense, (5) Terry's relationship with Henry was volatile, and his desire to help the defense varied according to his mood, (6) his story was not consistent with the evidence, and (7) Terry would say anything at any time. Counsel's decision not to call this witness was reasonable and did not amount to ineffective assistance. *Gerlaugh*, 144 Ariz. at 455, 698 P.2d at 700 (disagreements in trial strategy will not support ineffective assistance claim as long as challenged conduct has reasoned basis).

### E. *Failure to Withdraw*

Henry claims that his lawyer should have moved to withdraw or advised him to seek a new attorney because their relationship was severely strained. In fact, the lawyer told his client in a July 20, 1987 letter that he could try to obtain new counsel if he so desired. Counsel subsequently testified that because he was Henry's third lawyer, he knew it was unlikely the trial judge would appoint another. He did, however, move to withdraw on January 6, 1988, and again on March 16, 1988. Both motions were denied. Our review of the record leads us to conclude that although their relationship might have been difficult, it did not prevent the attorney from asserting a vigorous defense on Henry's behalf. We find no incompetence or prejudice.

### F. *Failure to Object to Improper Argument*

Since we have found no error in the prosecutor's "vouching" argument, there is no prejudice in defense counsel's failure to object thereto.

### G. *Failure to Request Continuance of Closing Arguments*

Defense counsel presented his closing argument from 4:00 to 5:30 p.m. Henry argues that the lawyer was ineffective for failing to seek a continuance until the next morning. The contention is frivolous. Defense counsel was not given a time limit on his argument, and has never contended that he was prevented from arguing any particular point to the jury. In fact, after the defense concluded its closing remarks the prosecution presented a rebuttal argument, and the jurors were instructed before being excused for the day. We find no merit to this claim.

## SENTENCING ISSUES

### I. THE PRIOR INVOLUNTARY MANSLAUGHTER

The trial judge found that Henry's 1978 California involuntary manslaughter conviction was an aggravating circumstance under A.R.S. § 13–703(F)(2) ("a felony ... involving the use or threat of violence on another person"). Henry argues that this finding was error because the California statutory definition of manslaughter included situations that would not necessarily involve violence. We agree.

■ The statutory definition of the prior crime, and not its specific factual basis, dictates whether an aggravating circumstance exists under A.R.S. § 13–703(F)(2). *State v. Romanosky*, 162 Ariz. 217, 228, 782 P.2d 693, 704 (1989).

> If the statutory definition of the crime for which the defendant was previously convicted necessarily includes the use or threat of violence, a trial court may find that it is a statutory aggravating circumstance under § 13–703(F)(2). If, under the statutory definition, the defendant could have committed and been convicted of the crime without using or threatening violence, the prior conviction may not qualify as a statutory aggravating circumstance under § 13–703(F)(2).

*Id.; see also, State v. Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983). We have defined "violence" to mean the "exertion of any physical force so as to injure or abuse." *State v. Arnett*, 119 Ariz. 38, 51, 579 P.2d 542, 555 (1978) (quoting Webster's Third New International Dictionary (1976 Unabridged)).

Cal.Penal Code § 192 in effect at the time of the prior incident defined involuntary manslaughter as follows:

> Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:

> . . . .

> (b) involuntary—in the commission of an unlawful act, not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle.

■ Under this definition, and the California cases, the offense could have been committed without the exertion of physical force so as to injure or abuse. *See Walker v. Superior Court*, 47 Cal.3d 112, 253 Cal. Rptr. 1, 18, 763 P.2d 852, 869 (1988) (failing to give child medical attention); *People v. Edwards*, 39 Cal.3d 107, 216 Cal.Rptr. 397, 402–03, 702 P.2d 555, 560–61 (1985) (aiding and abetting heroin user who dies of overdose). Contrary to the state's suggestion, A.R.S. § 13–703(F)(2) requires more than simply a volitional act that results in a death. *See State v. Schaaf*, 169 Ariz. 323, 334, 819 P.2d 909, 920 (1991) (if crime can be committed without use or threat of violence, it is not a statutory aggravating circumstance). Because the trial judge improperly considered the prior involuntary manslaughter a § 13–703(F)(2) aggravating circumstance, we remand for resentencing.

This case does not present the "unusual facts" of *State v. Bible*, 175 Ariz. 549, 596–598, 858 P.2d 1152, 1209–12, which would enable us to independently reweigh aggravating and mitigating circumstances and impose sentence without remanding to the trial court. Certain issues left undecided here, such as defendant's self-representation at sentencing, proper weighing of the prior armed robbery, and the claimed disparity between the Henry and Foote sentences, should be first determined by the trial judge.

## II. THE PRIOR ARMED ROBBERY

### A. *As an Aggravating Circumstance*

■ The trial court found that Henry's prior armed robbery conviction in California was an aggravating circumstance under A.R.S. § 13–703(F)(2). Henry argues that this finding was error because robbery in California is not necessarily a crime against a person. We rejected the same argument in *State v. Correll*, 148 Ariz. 468, 479, 715 P.2d 721, 732 (1986) and decline Henry's invitation to revisit the issue.

His reliance on *State v. Fierro*, 166 Ariz. 539, 804 P.2d 72 (1990) is misplaced. There, the Texas statutory definition of robbery included "recklessly" causing bodily injury to another during a theft; violence was not necessary to commit the offense. In contrast, California Penal Code § 211, in existence at the time of Henry's offense, did not include recklessness: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

### B. *Sufficiency of the Evidence*

Henry also contends that the prior armed robbery was not supported by sufficient evidence because he was not specifically identified as the person who committed the crime. This claim is without merit. Certified documents from California concerning the robbery contained Henry's picture and were admitted without objection. *State v. McAlvain*, 104 Ariz. 445, 447, 454 P.2d 987, 989 (1969). In addition, Henry admitted the offense at the presentence hearing.

### III. WEIGHING OF AGGRAVATING CIRCUMSTANCES

The trial judge found that the prior armed robbery was also an aggravating circumstance under A.R.S. § 13–703(F)(1) (prior felony punishable by life imprisonment). Henry therefore argues that the judge improperly weighed the armed robbery twice. *State v. Tittle*, 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985) (trial court may weigh aggravating circumstance only once so as to avoid double punishment).

The transcript of the sentencing hearing does not clearly reflect how the judge treated this matter. Because we have invalidated the prior involuntary manslaughter as a § 13–703(F)(2) aggravating circumstance, only the armed robbery remains as aggravation under either (F)(1) or (F)(2). On resentencing, the trial judge should clarify that this circumstance has been weighed only once.

### IV. THE FINDING THAT HENRY WAS A MAJOR PARTICIPANT

The trial judge found that Henry was a major participant in the kidnapping and robbery underlying the felony murder conviction, and that he showed reckless indifference to human life. The judge therefore determined that Henry was death-eligible according to the holding in *Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127, 145 (1987) (major participation in felony, combined with reckless indifference to human life, satisfies culpability requirement of *Enmund v. Florida*, 458 U.S. 782, 801, 102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140, 1154 (1982) for imposition of the death penalty).

Here, the evidence supporting Henry's kidnapping and robbery convictions clearly warrants the finding that he was a major participant in those crimes. Furthermore, the evidence that two people dragged the victim up the berm, that Henry's clothes were spattered with blood, that he drove off immediately after the stabbing, and that he failed to immediately tell officers about the victim, supports not only a finding of reckless indifference to human life, but also a conclusion that Henry was an active, intentional participant in the killing.

### V. THE FINDING OF PECUNIARY GAIN

The trial judge found the pecuniary gain aggravating factor of A.R.S. § 13–703(F)(5). Henry argues that he cannot be responsible for Foote's expectation of pecuniary gain. This argument misses the point. The record supports a finding of Henry's *own* expectation of pecuniary gain. He knew of the California warrant, and when his truck broke down on the way out of California, he had a motive to commandeer the victim's truck and eliminate him. Moreover, he was convicted of both robbery and theft, and we have determined that these convictions were based on sufficient evidence.

### VI. BALANCING MITIGATING FACTORS

Henry argues that the trial judge improperly refused to consider in mitigation his troubled upbringing and the fact that he had saved lives in the past. Our review of the record shows that the judge did consider these factors, but concluded that they were entitled to little or no weight. We find no error.

### VII. SENTENCING DISPARITY

Citing *State v. Marlow*, 163 Ariz. 65, 786 P.2d 395 (1989), Henry complains of the disparity between his sentence and Foote's. The same judge sentenced both. We need

not reach this issue in light of our remand for resentencing on the murder conviction. In that proceeding, the trial judge will have an opportunity to place on the record his findings regarding any such disparity.

## VIII. NOTICE OF AGGRAVATING FACTORS

Henry argues that the state failed to give timely notice of the proffered aggravating factors because its sentencing memorandum was not filed until the day before the presentence evidentiary hearing. This issue is mooted by our remand for resentencing.

## IX. EIGHTH AMENDMENT

This court has previously considered and rejected Henry's argument that Arizona's death penalty scheme fails to sufficiently channel the sentencer's discretion. *State v. Greenway*, 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991).

## DISPOSITION

We have reviewed the record for fundamental error and found none. A.R.S. § 13–4035. We remand for resentencing on the first degree murder conviction only. Henry's convictions and other sentences are affirmed, as is the trial court's denial of his petition for post-conviction relief.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.