NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

KENYON OVERE HAMWRIGHT, *Appellant.*

No. 1 CA-CR 17-0732
1 CA-CR 17-0739
(Consolidated)
FILED 3-28-2019

---

Appeal from the Superior Court in Maricopa County
No.  CR2014-105424-001
CR2017-106383-001
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade, Seth M. Apfel
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

_____

**C A T T A N I**, Judge:

**¶1**　　　　Kenyon Overe Hamwright appeals his convictions and sentences for aggravated assault, discharge of a firearm at a structure, and misconduct involving weapons.　For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　In February 2017, Hamwright fired a handgun multiple times at a vehicle L.W. was driving.　L.W. had been arguing about a phone with Hamwright's girlfriend (in Hamwright's presence) at a hotel, and L.W. fled when he saw that Hamwright had a gun.　Before L.W. was able to drive away, Hamwright fired six shots at L.W.'s vehicle.　The crime was captured on surveillance video, and when Hamwright was arrested, he was wearing much of the same distinctive clothing evident in the surveillance video. L.W. identified Hamwright as the shooter, and Hamwright was charged with the offenses outlined above.

**¶3**　　　　Following a jury trial, Hamwright was convicted as charged. Based on Hamwright's lengthy criminal history and the fact that he was on probation when he committed the instant offenses, the superior court sentenced him to concurrent aggravated sentences, the longest of which is 20 years.

**¶4**　　　　Hamwright timely appealed his convictions and sentences. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033(A).

## DISCUSSION

### I.　Restraints During Trial.

**¶5**　　　　Hamwright argues that the superior court improperly required him to wear restraints during trial.　He asserts that the order requiring him to wear a leg brace and a stun belt lacked sufficient justification and thus violated his due process rights.

**¶6**          Issues involving courtroom security generally fall within the superior court's discretion. *State v. Dixon*, 226 Ariz. 545, 551, ¶ 22 (2011). But a court may not require visible shackles to restrain the defendant unless the court determines—on a case-specific basis—that visible shackles are necessary to safeguard an "essential state interest," such as courtroom security. *Deck v. Missouri*, 544 U.S. 622, 624 (2005) (citation omitted).

**¶7**          The threshold issue is whether Hamwright's restraints were visible. *Dixon*, 228 Ariz. at 552, ¶ 27. The record indicates the restraints could not be seen. Further, the leg brace neither obviously impeded Hamwright's movements nor made any sounds to alert the jury to his restraints. Because Hamwright has not established that the jury was aware of his restraints, we find no due process violation.

**¶8**          Moreover, even assuming the jury became aware of the restraints, the court did not err by determining restraints were necessary to safeguard courtroom security. Hamwright was charged with offenses involving a deadly weapon. He had been convicted of several other violent offenses, including attempted murder. While in prison, he incurred 32 violations, including possessing or manufacturing weapons. Additionally, the small size of the courtroom made it difficult for security officers to quickly neutralize any potential risks to the jury and courtroom staff. Accordingly, the superior court did not abuse its discretion by ordering restraints.

## II.     Right to Self-Representation and Access to the Court.

**¶9**          Hamwright asserts that after he chose to represent himself (with the assistance of advisory counsel), he was unable to effectively represent himself because (1) his phone access was limited to when he was in court, (2) his restraints impeded his ability to represent himself, and (3) the jail disposed of legal documents he needed for trial. Hamwright argues that these issues combined to deny him his right to self-representation and his right of access to the courts. Although we review constitutional issues de novo, Hamwright failed to object on constitutional grounds in the superior court, so we review only for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 138, 142, ¶¶ 1, 21 (2018).

**¶10**          The Fifth Amendment to the U.S. Constitution guarantees access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343, 354 (1996). But a defendant who represents himself does not have a right to his "preferred means of access." *State v. Henry*, 176 Ariz. 569, 584 (1993). A defendant's

constitutional rights are violated only when he is "denied *all* meaningful opportunity to prepare a defense." *Id.*

¶11 Here, the record demonstrates the court did not deny Hamwright a meaningful opportunity to prepare a defense.

### A. Phone Access.

¶12 The court promptly addressed Hamwright's complaint regarding phone access by requesting that the jail allow him to make calls notwithstanding restrictions resulting from Hamwright's disciplinary issues in jail. Hamwright did not raise the issue again, suggesting that the issue was resolved. Further, Hamwright does not explain how his alleged inability to make legal calls affected his right to receive a fair trial. He has not established fundamental error.

### B. Restraints.

¶13 Hamwright asserted during trial that his restraints prevented him from moving around the courtroom and viewing the State's evidence as it was presented to the jury. In response, the court offered to have bench conferences at the defense table, and offered to move the video screen so Hamwright could see the State's evidence as it was being presented. The court permitted Hamwright to move around the courtroom in whatever way his defense required, and Hamwright has not pointed to a specific instance in which his ability to represent himself was prejudiced by his restraints. We find no error.

### C. Disposal of Documents.

¶14 Hamwright notified the court that officers at the jail had disposed of some of his legal documents. The relevant legal documents included a copy of the preliminary jury instructions and the notes he had taken in preparation for a hearing. The superior court instructed a sheriff's deputy to inform jail personnel that Hamwright needed access to his documents. The court also provided copies of the missing legal documents (including the preliminary jury instructions), and postponed trial for 5 days to permit Hamwright to meet with his investigator and a trial witness. The court's efforts apparently assuaged Hamwright's previous concerns as he did not bring the issue to the court's attention again. Further, he has not explained how losing documents prejudiced his case.

¶15 Accordingly, Hamwright has not shown he was denied a meaningful opportunity to prepare a defense.

**III.   Right to Confrontation.**

¶16      Before trial, the court ruled that Hamwright would be permitted to impeach the victim with the victim's felony convictions but could not discuss the nature of the victim's prior convictions. In 2008, the victim was convicted of possessing marijuana for sale; in 2015, he was convicted of facilitating the transportation of marijuana for sale. Hamwright argues the superior court's ruling violated the Confrontation Clause of the Sixth Amendment. Generally, we review Confrontation Clause challenges de novo, but because Hamwright failed to object at trial on these grounds, we review only for fundamental, prejudicial error. *See State v. Boggs*, 218 Ariz. 325, 337, ¶ 55 (2008).

¶17      Although the right of cross-examination is essential to the right of confrontation, the superior court retains discretion "to curtail the scope of cross-examination to within reasonable limits." *State v. Doody*, 187 Ariz. 363, 374 (App. 1996) (quotation omitted). The question is "whether the court unduly inhibited the defendant's ability to present information bearing on issues or on the credibility of witnesses." *Id.*

¶18      Here, Hamwright's cross-examination of the victim was not unduly inhibited. His defense was mistaken identity. He elicited testimony that the victim was unsure of his identity as the shooter. Hamwright impeached the victim with three "sanitized" prior felony convictions and the victim's probation status. Further, Hamwright was able to cross-examine the victim concerning the bullets found in his vehicle, implying that because the victim possessed bullets he likely possessed a gun as well, and the victim acknowledged that he would be "in trouble" if he were caught with a gun because of his status as a convicted felon.

¶19      Hamwright argues the court should have allowed him to cross-examine the victim on the nature of his drug-sales convictions because a State's witness testified that the victim had a valid medical marijuana card. He contends the victim's multiple drug-related convictions "called into question . . . the witness's claim about having the . . . medical marijuana card." But under the Arizona Medical Marijuana Act, a qualifying patient's receipt of a medical marijuana card does not depend on the patient's prior felony convictions. A.R.S. §§ 36-2801(13), -2804.02(A), -2804.05(A). Under A.R.S. § 36-2815(C), a cardholder will have his card revoked if he sells marijuana to non-cardholders. But the record does not include the date when the victim's medical marijuana card was issued, so it is unclear whether he was convicted of marijuana sales before or after receiving the medical marijuana card. And even assuming the victim did

not have a valid medical marijuana card, Hamwright fails to explain how the victim's legal or illegal possession of marijuana at the time of the shooting had any bearing on whether Hamwright committed the shooting.

¶20        Finally, even assuming error, Hamwright has not established prejudice resulting from the victim's testimony, particularly given the surveillance video of the crime showing the shooter to be wearing the same type of clothing Hamwright was wearing shortly after the crime. Accordingly, Hamwright's fundamental error claim fails.

## CONCLUSION

¶21        For the foregoing reasons, Hamwright's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA